**T & R ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**CONTINENTAL GRAIN COMPANY,**
**Defendant-Appellee.**

No. 78–1295.

United States Court of Appeals,
Fifth Circuit.

March 17, 1980.

---

**12.** *See* note 2 *supra.*

Robert W. Hanson, Albertville, Ala., Allen Poppleton, Birmingham, Ala., for plaintiff-appellant.

Johnston, Barton, Proctor, Swedlaw & Naff, Alan W. Heldman, Sydney Lavender, Birmingham, Ala., for defendant-appellee.

Before TUTTLE, FAY and THOMAS A. CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal attacks a judgment confirming an arbitration award in favor of the defendant, Continental Grain Company (Continental) and against plaintiff-appellant, T & R Enterprises, Inc. (T & R). The appellant claims that the district court erred in (i) ordering the parties to proceed to arbitration in the face of an asserted dispute over the existence of an agreement to arbitrate, an issue which it claims should be submitted to a jury for resolution; (ii) entering judgment on the arbitration award under an agreement that did not explicitly provide for judicial enforcement; and (iii) confirming an award allegedly made in a different United States court district. We affirm.

T & R, engaged in poultry and poultry-related operations in Alabama, contracted with Continental, a Delaware corporation, to purchase feed corn in four deliveries, to take place over several months, at a price fixed at the date contracts were made. The orders were first placed by telephone, then reduced to writing by four sales confirmation slips sent from Continental to T & R. These slips were all signed by T & R's president and returned to Continental. Although arbitration was not mentioned in any of the telephone conversations between T & R and Continental, the face of each standard form sales confirmation slip bore the following legends: "subject to the Rules of Grain and Feed Dealers National Association;" and, in block capitals: "THE TERMS PRINTED ON THE BACK HERE-

OF ARE A PART OF THIS CONTRACT." The reverse side of each slip contained a provision for the settlement of any dispute arising under the contracts by arbitration "to the Exchange/Board and/or Association under whose Rules this contract has been drawn." The clauses further provided that "[t]he decision reached shall be final and binding upon all the parties·thereto."

In January 1975, Continental began to deliver corn under the first of the four contracts. In February, after accepting the first shipments, T & R gave notice purporting to cancel all four contracts on the grounds that the corn delivered did not meet contract standards of quality and that Continental gave insufficient assurance of satisfactory performance in the future. When Continental refused to accept the cancellations, T & R filed suit in district court seeking to rescind the contracts. Continental defended by moving under the Federal Arbitration Act, 9 U.S.C. § 3 (1970), to stay the proceedings pending arbitration. The judge considered affidavits from both parties and a deposition taken by the plaintiff and granted the stay on August 4, 1975.

Although Continental had not requested additional relief, the district court ordered the parties to proceed to arbitration, an order governed by § 4 of the Act.[1] T & R moved for a stay of the order on grounds not involved in this appeal.[2] It made no mention of the failure of the court to proceed under provisions of § 4, which required five days' notice to the other party. Neither did it claim the right to have a jury trial on the issue of the existence of the arbitration agreement. On September 29, 1975, the court again ordered the plaintiff to arbitration "without delay."

Thereafter, the parties proceeded with the arbitration including the filing of briefs by T & R which later refused to comply with a rule of the National Grain and Feed Association that the parties execute an arbitration contract. Thereupon, in April 1976, Continental went back into district court seeking "further relief." T & R then filed a "motion to expunge the record" for the first time objecting to the previous orders on the ground that the court did not follow the steps required by § 4 of the Federal Arbitration Act. The court ac-

---

1. Section 4 provides:

   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of· Civil Procedure. The court shall hear the parties, and· upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

2. The grounds were that the National Grain and Feed Association had incorrectly been termed the Grain & Feed Dealers National Association on the contracts involved, and that the rules of the Association were "opposite and repugnant" to the Alabama Uniform Commer-. cial Code.

knowledged that the § 4 requirements had not been met and amended its August 4, 1975 order "to be merely a stay of the proceedings." However, the court considered Continental's pending request for further relief as a § 4 petition for an order directing arbitration. It also considered T & R's claim that it had missed the opportunity of requesting a jury trial by the court's failure to follow § 4. The court stated, however, that T & R had "not raised a genuine issue as to the making of the agreement for arbitration . . ." and thereupon again ordered the parties to arbitrate.

The arbitration hearing was held in Birmingham, Alabama, the district in which the proceedings were pending, and they resulted in an award adverse to T & R. Continental moved for judicial confirmation and enforcement of the arbitral decree under § 9 of the Federal Arbitration Act. On December 13, 1977, almost three years after this dispute first arose, the district court granted Continental's motion and reduced the award to judgment. This appeal followed.

T & R's first challenge to the judgment confirming the arbitration award is that the district court erred in "summarily" ordering T & R to arbitrate—a § 4 order—on the basis of a § 3 motion for a stay of proceedings pending arbitration. While the district court later recognized this error, T & R urges that the judge only added insult to injury by treating Continental's motion for additional relief as a § 4 motion and using it summarily to decide an issue that, under § 4, is a jury issue.

While it is, of course, preferable for the courts carefully to observe statutes and rules of procedure, we see no prejudice, harm or inconvenience to T & R resulting from the procedures that the court followed here. Because of the conduct of the complaining party in not timely objecting to the lack of statutory basis for the court's first or second order to arbitrate and because the court considered T & R's late claim to a jury trial, even though not timely made, we hesitate to elevate form over substance.[3]

Section 4 of the Federal Arbitration Act provides in relevant part that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." Under § 4, the party allegedly in default of an agreement to arbitrate receives five days' notice, in writing, of the petition to compel arbitration, and has an opportunity to demand a jury trial on the issue of the making of the arbitration agreement. T & R claims that the district court's acknowledged failure to follow these procedures in entering the first orders compelling arbitration deprived it of the statutory and constitutional right to demand a jury trial to resolve the allegedly disputed existence of the arbitration agreement.

The court did acknowledge the error of its ways, stating that it was "in agreement with the plaintiff that the defendant's motion for a stay should not have been treated as a motion to compel arbitration under 9 U.S.C. § 4, in that the procedural requirements of that section were not complied with." Treating Continental's motion for further relief, then pending, as a § 4 petition, the court found that "the plaintiff has not raised a genuine issue as to the making of the agreement for arbitration or the failure to comply therewith, and that therefore the parties are due to proceed without further delay to arbitration in accordance with the terms of their agreement." The court thus gave the same consideration to T & R's request for a jury trial as it would have, had the procedures under § 4 been followed.

At first blush, it appears that in some cases a party positioned as was T & R here

---

**3.** This is particularly true in an area so favored as arbitration. The policy of the Federal Arbitration Act is to encourage arbitration and to relieve congestion in the courts. *See United Steelworkers of America v. American Manufacturing Co.*, 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *Textile Workers Union of America v. Lincoln Mills*, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, *reversing*, 5 Cir., 230 F.2d 81; *Seaboard Coast Line Railroad Co. v. National Rail Passenger Corp.*, 5 Cir., 1977, 554 F.2d 657, 660, and cases cited at n.4.

might complain that without the specific notice provided for under § 4, a hearing for another purpose might have been translated into a § 4 hearing without the injured party having an opportunity adequately to prepare for the issue. We do not face that problem here, for T & R did not urge this point either in any of its motions or in its brief or oral argument before this Court. It complains only of the fact that the failure of the trial court to follow the proceedings of § 4 prevented it from obtaining the jury trial to which it claimed it was entitled.

Continental places its support of the trial court's action on three grounds: (a) T & R itself elected to file the original action in the district court as a non-jury action; (b) T & R received repeated orders to arbitrate and elected not to demand a jury on the issue of "making of the arbitration agreement" until after the second such order and after commencing to comply with the order; (c) the "making of the arbitration agreement" was not genuinely at issue, as the four contracts containing the arbitration agreement, signed by T & R, were the very contracts declared upon in T & R's original complaint, identifying those instruments as evidencing the four transactions sued upon.

We need not decide whether T & R's failure to request a jury trial at the time it filed its complaint amounted to a waiver of a jury, once the provisions of the Arbitration Act were invoked by the other party. We consider that the conduct of T & R in not challenging the trial court's order as failing to give it an opportunity to elect a jury trial until Continental filed its third request for an arbitration order, and its failure even then to place its objection on the absence of due process notice for hearing purposes sufficiently validates the court's proceeding to determine whether there was a true issue as to the "making of the arbitration agreement," without more.

Here, when the court issued its initial order directing T & R to arbitrate the dispute, the latter company responded by filing a motion to stay the effect of the order on two grounds totally unrelated to any of the issues now before the Court. The principal ground was that some of the terms of the arbitration rules of the Association were in conflict with Alabama statutes. No mention was made by T & R in this motion to the effect that the original order had not been requested under § 4 and thus lacked adequate notice and an opportunity for T & R to request a jury trial. Thereafter, after the court denied this motion, the court again ordered T & R to arbitrate. Thereafter, for several months, the parties initiated the arbitration proceedings until T & R again demurred. Thereupon, Continental filed its motion asking for "further relief." Thereafter, on April 16, 1976, approximately one year after the date on which it originally filed the complaint, T & R filed a motion "to expunge the record." Now, for the first time, it pointed out that the court's original order to arbitrate, issued August 4 of the previous year, was defective in that it was not based on a petition by Continental under § 4 and it did not give the five days' notice prescribed in that section. Still, it did not object to the issuance of the August 4 order on the ground that it had denied T & R of any opportunity to prepare for a hearing on the issue of the execution of the arbitration agreement or any other issue. It did complain of its inability to make an election to have a jury trial.

As above indicated, the trial court heeded the motion to the extent of holding that the August 4, 1975 order directing arbitration was invalid because not based upon a § 4 petition, but the court also considered T & R's complaint that it had not had an opportunity to request a jury trial. In its order, the court considered the Continental motion for further relief as a § 4 petition and the court then considered all of the documents that had been submitted by the parties prior to the first order. The court then decided on the basis of the documents, including the deposition, T & R had "not raised a genuine issue as to the making of the agreement for arbitration." The court thereupon entered its third order directing that arbitration be completed.

■ We conclude that the failure of T & R to mention the § 4 issue to the court on either of the first two occasions when it complained of the original order, coupled with its commencing the arbitration proceedings in accordance with those orders, amounted to a waiver of its right to rely upon the specific provisions of § 4. The principle of waiver as applied to pleadings under the Federal Rules of Civil Procedure instructs us as to the validity of this position. Rule 12 F.R.C.P. provides in paragraph (b):

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleadings thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) *insufficiency of process,* (5) *insufficiency of service of process,* (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. . . . [Emphasis added.]

Rule 12(g), headed "Consolidation of Defenses in Motion" provides:

A party who makes a motion under this rule may join with it any other motions herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof [not relevant here] on any of the grounds there stated.

Then Rule 12(h), "Waiver or Preservation of Certain Defenses" provides as follows:

(1) A defense of lack of jurisdiction over the person, improper venue, *insufficiency of process, or insufficiency of service of process* is waived

(A) if omitted from a motion in the circumstances described in subdivision (g) or

(B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

[Emphasis added.]

■ Thus, as stated by Wright and Miller:

the message conveyed by the present version of Rule 12(h)(1) seems clear. It advises a litigant to exercise great diligence in challenging personal jurisdiction, venue, or service of process. If he wishes to raise any of these defenses he must do so at the time he makes his first defensive move—whether it be a Rule 12 motion or a responsive pleading.

Wright & Miller, *Federal Practice & Procedure Civil,* Volume 5, 855. Since the notice requirements may well be equated with service of process of ordinary pleadings, it should be equally clear that the failure of a party to object at the first opportunity available to it to raise the question by motion amounts to a waiver of whatever rights the party may have had. We would not be so ready to assume a waiver unless the circumstances demonstrated beyond any doubt that the party now objecting to the want of notice had actually received all the benefits it would have been entitled to with the notice. Here, the only objection made by T & R the third time around, was that it had been denied the right to a jury trial. It did not object that it had been unable to prepare for a hearing on the issue of the making of an arbitration agreement.

But, as we have already pointed out, T & R lost nothing, because of the trial court's giving full consideration to its request for a jury trial. The court, presumably using the same standards that would apply in any case in which a motion for directed verdict or a motion for judgment n. o. v. is considered, concluded that there was no substantial issue of fact to be submitted to a jury.

This then brings us to the decisive question whether the party resisting arbitration has put the existence of an agreement to

arbitrate "in issue." T & R relies on a recent Fourth Circuit case, *Supak & Sons Manufacturing Co., Inc. v. Pervel Industries, Inc.*, 593 F.2d 135 (4th Cir. 1979), as supporting its position. It also cites *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978), as supporting the *Supak* decision. A very obvious distinction between this case and those cited by T & R is that in neither of those cases did the party seeking to avoid arbitration sign the written agreement to arbitrate, whereas here it did.

We are rather persuaded by *Almacenes Fernandez S. A. v. Golodetz et al.*, 148 F.2d 625 (2d Cir. 1945), which stated:

> To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial. *See, Radio City Music Hall Corp. v. United States*, 2 Cir., 135 F.2d 715.

In that case, the parties had both actually signed the contract incorporating the arbitration agreement. The same court has recently approved this holding in *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972), a case in which the court found that there was an issue to be tried by the jury. Here, T & R has not made a sufficient showing to entitle it to a trial by jury on demand. The contracts underlying this litigation and containing the arbitration clauses were not only signed and returned by T & R but they were asserted in the original complaint filed by T & R to be the contracts between the parties. The only item in the record approaching "an unequivocal denial that the agreement to arbitrate was made" is T & R's assertion that it believed the telephone conversations with Continental's agent constituted the real contracts and that the subsequently exchanged signed confirmation slips cannot modify or add essential terms. This argument is contrary to the universally prevailing rule that, absent allegations of misrepresentation, fraud, or deceit, one who executes a written contract is bound by its terms. This court has express-

ly held that this principle applies to prevent a party from avoiding the effect of his written acceptance of a contract which expressly, above his signature, on the face of the contract, incorporates the provisions on the reverse side including promises to arbitrate. *Southeastern Enameling Corp. v. General Bronze Corp.*, 434 F.2d 330 (5th Cir. 1970).

■ We conclude that on the record before the Court it would have been required to direct a verdict requiring arbitration if a jury had been empaneled under the provisions of § 4.

Appellant's second basis for attacking the judgment is that the district court exceeded its statutory authority in enforcing the award. Section 9 of the Federal Arbitration Act provides that confirmation of an award is appropriate only where "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award . . . ." T & R argues that the language in the contracts before us, providing that "the [arbitrator's] decision shall be final and binding" is insufficient to indicate that the parties consented to the entry of judgment on the award.

We look to *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir. 1974) for a parallel case. In that case, the agreement provided that the decisions of the arbitrators should be final, as is true here. The court there said:

> Whatever "final" means, it at least expresses the intent of the parties that the issues joined and resolved in the arbitration may not be tried de novo in any court, state or federal. Thus, the only point left open for conjecture by clause 37 is whether the parties intended for judgment to be entered in a federal, as opposed to a state, court. Where, as here, the substantive law to be applied to interpretation of the contract itself is federal maritime law, it seems doubtful to us that either party was particularly concerned that an award might be enforced in federal court; their main concern was that the award should be "final."

 

Whatever doubt remains as to the intent of the parties from the language of clause 37, that doubt is removed by the conduct of the parties to this case as recounted above. At an early stage, *the power of a federal court was invoked* to secure the appointment of the "third" arbitrator. After arbitration, appellant moved in federal district court under 9 U.S.C. § 9 to vacate and/or modify that award. Under these circumstances, it seems abundantly clear to us that both parties in fact consented to the entry of judgment on any arbitral award entered, and this was sufficient to permit the exercise of jurisdiction by the district below. [Emphasis added]

So, too, here, the power of the federal court in the Northern District of Alabama was invoked by T & R when they initially filed the complaint on these contracts in that jurisdiction. We conclude that, once invoked, the power of that court to enter a judgment on the arbitrator's award which was an outgrowth of the original action was sufficient to satisfy the jurisdictional requirements. *See, also,* for the discussion of a somewhat similar construction by the Supreme Court in a maritime case, *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 276–77, 52 S.Ct. 166, 169–70, 76 L.Ed. 282 (1931).

Finally, T & R complains that the trial court lacked jurisdiction to make a final judgment in light of the provision of § 9 of the Act: "If no court is specified in the agreement of the parties, then such application may be made to the United States Court in and for the district within which such award was made."

Although it is uncontested that the arbitration proceedings took place in Birmingham in accordance with the explicit requirement by the district court's order, appellant points to the fact that the signatures of the three arbitrators appear above their addresses in three different cities and three different states, none of which is in the Northern District of Alabama. From this appellant argues that the arbitration award was "made" somewhere other than the Northern District. Because there is no proof as to where the arbitration committee actually concluded its work or signed the award appellant's contention must fall for that reason alone. In any event, we do not think the word "made" would necessarily be construed to apply to the place where a document was signed rather than the place where the proceedings were held and concluded.

The judgment is AFFIRMED.