Thomas B. CAMPBELL and Theresa S. Campbell, Plaintiffs–Appellants,

v.

DOMINICK & DOMINICK, INC., Dominick Investor Services Corporation, and Lois Sivalls, Defendants–Appellees.

No. 88–5011.

United States Court of Appeals, Eleventh Circuit.

April 20, 1989.

---

Douglas H. deAlmeida and Russell L. Forkey, Russell L. Forkey, P.A., Deerfield Beach, Fla., for plaintiffs-appellants.

Dyla L. Warren, Fleming, Haile & Shaw, P.A., North Palm Beach, Fla., for Dominick & Dominick, Inc.

Before VANCE and KRAVITCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

BY THE COURT:

Appellants, Thomas B. and Theresa S. Campbell, sued appellees, Dominick & Dominick, Inc., Dominick Investor Services Corp., and Lois Sivalls (collectively "Dominick"), in the United States District Court for the Southern District of Florida. Their amended complaint claims money damages for violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5 (1987). The district court granted Dominick's motion to stay judicial proceedings and to compel arbitration, and the Campbells appealed. By an order of December 28, 1988, we dismissed the appeal for lack of jurisdiction. We now vacate that order and substitute the following:

I. FACTUAL BACKGROUND

Appellants' complaint states that, in March, 1983, they opened an options account with Dominick Investor Services Corporation. In the process, they executed an "Options Trading Questionnaire," which defined the account objectives and established limits on trading to achieve them. One such limitation was that any "out of the ordinary" orders by Mr. Campbell were to be verified by Dominick with Mrs. Campbell before execution, as Mr. Campbell is prone to periods of depression during which his judgment is suspect. In April 1983, Mr. Campbell placed an order with Dominick for 1,000 naked calls of Baldwin United Corporation. The order was executed without first checking with Mrs. Campbell, and the Campbells were damaged as a direct and proximate result of the transaction.

At first, Dominick asserted no right to have this dispute arbitrated. In January 1986, however, Dominick learned that this court was reconsidering the arbitrability of section 10(b) claims and moved to stay the action and to compel arbitration. The district court denied the motion, and Dominick appealed. While that appeal was pending, the Supreme Court decided *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which held section 10(b) claims arbitrable. Dominick voluntarily dismissed its appeal and moved once again in the district court to stay judicial proceedings and to

compel arbitration. The court entered a three-part order (1) staying judicial proceedings, (2) directing the parties to arbitrate their dispute, and (3) closing the case for statistical purposes. The Campbells appealed, arguing that Dominick had waived its right to arbitrate the dispute and that, in any case, the district court erred by staying the action and compelling arbitration without first allowing limited discovery as to the validity of the arbitration agreement.

## II. DISCUSSION

■ On November 19, 1988, while this appeal was pending, the President signed into law the Judicial Improvements and Access to Justice Act. Section 1019 of the Act amended Title 9 of the United States Code by adding a new section 15, which provides, in part:

### § 15. Appeals

.    .    .    .    .

(b) Except as otherwise provided in section 1292(b) of Title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

Pub.L. 100–702, 102 Stat. 4642, 4671 (1988). As added, 9 U.S.C. § 15(b)(1) denies us jurisdiction of appeals, such as this, which seek review of orders granting stays of judicial proceedings pending arbitration. Because this legislation applies to cases pending on its enactment date, we dismiss the appeal.

■ Although, contrary to its usual practice when passing jurisdictional statutes, Congress did not state explicitly the date upon which the new 9 U.S.C. § 15 was to become effective, the legislative history convinces us that the statute was meant to take effect upon enactment. As noted above, the new provision was added by section 1019 of the Act. That section was first passed as section 207 of the House version of H.R. 4807. *See* H.R. 4807, 100th Cong., 2d Sess. § 207, 134 Cong.Rec. H7443, H7447 (daily ed. Sept. 13, 1988). Section 208(b) of the House version stated expressly that the amendments made by the former section 207 "shall take effect on the date of enactment of this Act." *Id.;* *see also* H.Rep. No. 889, 100th Cong., 2d Sess. 37, *reprinted in,* 1988 U.S.Code Cong. & Admin.News 5982, 5997. In the Senate, the substance of section 207 was moved to section 1019, and section 208(b) was deleted. Apparently, however, this change was stylistic only, and we do not read it to suggest another effective date. Thus, the legislative history, particularly when viewed in light of the presumption that legislation is effective when enacted unless otherwise specified, indicates that 9 U.S.C. § 15 took effect on November 19, 1988.

Congress also failed to specify whether section 15 applies to cases which were pending on November 19, 1988. Again, however, we are not without guidance. In *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that a statute providing attorney's fees to successful plaintiffs in school-desegregation actions should be applied retrospectively in an action which was pending on appeal when the statute was enacted and became effective. The Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016; *see also United States v. Marengo County Comm.,* 731 F.2d 1546, 1553 (11th Cir. 1984). In determining whether manifest injustice would result from retrospective application of the new attorney's-fees provision, the Court considered three factors: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact in the change of law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019.

Although this case involves a dispute between private parties, the jurisdictional issue implicates broad national concerns in the proper functioning of the judicial process and in the pursuit of alternative dispute resolution techniques. Section 15 does not affect substantive rights; only the timing of appeals is at issue. And, as is apparent from our order of December 28, 1988, applying section 15 in this case will not alter its disposition, as section 15(b)(1) is consistent with our holdings that interlocutory orders compelling arbitration are not appealable unless certified by the district court under 28 U.S.C. § 1292(b). Therefore, "manifest injustice" will not result.

We note also that, where the retrospective application of jurisdictional statutes has been at issue, courts have been especially careful to give retrospective application to curative measures. Thus, in *Ralpho v. Bell*, 569 F.2d 607 (D.C.Cir.1977), the D.C. Circuit retrospectively applied a statute eliminating the amount-in-controversy requirement for federal jurisdiction of "action[s] against the United States, any agency thereof, or any officer or employee thereof in his official capacity." *See* 569 F.2d at 615 n. 51 (quoting Pub.L. 94–574, 90 Stat. 2721). The *Ralpho* court found dispositive Congress' apparent intention to remedy "the injustice wrought by closing the federal courts to those with pecuniarily insignificant but important grievances against the government," *id.*, and held that, in the absence of specific congressional instructions, a newly enacted jurisdictional statute should be applied to cases pending on the enactment date. *See also Andrus v. Charlestone Stone Prods. Co.*, 436 U.S. 604, 608 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978) (following *Ralpho* without extended discussion).

This case is similar. Here, the legislative history suggests that Congress was keenly aware that, in the wake of *Gulfstream Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), the Courts of Appeals were treating interlocutory orders granting arbitration and those denying arbitration exactly the same for appealability purposes. In a statement prepared in lieu of a Senate report, Senator Heflin remarked that under prior doctrine, "[t]he appealability of orders that direct arbitration, stay arbitration, or stay judicial proceedings depend[ed] on accidents of procedure that d[id] not respond to any rational needs of either appeals timing or arbitration." 134 Cong.Rec. S16284, S16309 (daily ed. Oct. 14, 1988). The House Report stated that the new section 15 would "improve the appellate process in the Federal courts of appeals with respect to arbitration" by providing for interlocutory appeal "when a trial court rejects a contention that a dispute is arbitrable under an agreement of the parties ... [while] ... specifically prohibit[ting interlocutory appeal] ... when the trial court finds that the parties have agreed to arbitrate...." *See* H.Rep. No. 889, *supra* at 37, 1988 U.S.Code Cong. & Admin.News 5997. Thus, as in *Ralpho*, Congress' intention appears to have been curative, and retrospective application should be presumed.

Accordingly, this appeal is DISMISSED, and the case is REMANDED to the district court.