**WOODWARD PIPELINE, INC., Appellant,**

v.

**RELIANCE PIPELINE CO., INC., Appellee.**

No. 01–88–01035–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 1989.

Rehearing Denied Aug. 31, 1989.

Jacalyn D. Scott, Beverly Arleen Sandifer, Wilshire, Scott, Halbach & Dyer, Houston, for appellant.

Bertrand C. Moser, William Pannill, Houston, for appellee.

Before HUGHES, SAM BASS and DUGGAN, JJ.

## OPINION

HUGHES, Justice.

This is an appeal from an order of the trial court staying further litigation between the parties and compelling them to proceed to arbitration. Appellee, Reliance Pipeline Co., Inc. ("Reliance"), moved this Court to dismiss this appeal for want of jurisdiction, claiming that the order appealed from is interlocutory and not appealable. We ordered that motion taken with the case. For the reasons set forth below, we agree with appellee and order the appeal dismissed.

## Procedural Background

In March 1988, Woodward Pipeline Co., Inc. ("Woodward") filed suit against Reliance in state district court to collect monies allegedly due Woodward under the terms of an assignment agreement and an amended joint venture agreement. In July 1988, Reliance demanded arbitration pursuant to article IX of the joint venture agreement,[1] and designated the first member of the board of experts. Woodward failed to designate a second expert within 10 days. Reliance then petitioned the chief judge of the United States District Court for the Southern District of Texas to make the designation.

Reliance asked the trial court to dismiss Woodward's suit and submit the litigation to the board of experts Reliance had partially constituted. The trial court dismissed the proceedings and ordered the parties to arbitrate the dispute.

Woodward timely filed a motion for new trial asserting the trial court erred when it found the United States Arbitration Act[2] (hereinafter the "Arbitration Act") applied to the controversy between the parties because: (1) as a matter of law, Woodward was entitled to a jury trial when it specifically denied that it ever agreed to submit to arbitration; and (2) the disputed contract does not contain an agreement to arbitrate.

In response to Woodward's motion for new trial, the court entered the following order:

2. The court grants Woodward's motion for new trial to the extent necessary to comply with the procedural requirements

---

1. The joint venture agreement states:

*Section 9.01. Board of Experts: Appointment.* Any controversy between the parties arising under this Agreement and not resolved within a reasonable time shall be determined by a Board of Experts upon notice of submission given by Venturers. The experts shall be three (3) in number and shall constitute a panel which shall be appointed in the following manner:

(a) The party wishing the appointment to be made shall give notice in writing to that effect to the others and shall in such notice appoint the first expert to the panel.

(b) The party receiving the said notice shall within ten (10) days by notice in writing to the other appoint the second expert to the panel and if it shall fail to do so within the period afore-said such such appointment may (at the request of the other party) be made by the Judge who is willing to serve and who is at the time senior in point of service in the United States District Court for the Southern District of Texas.

(c) The two experts appointed under (a) and (b) above shall within ten (10) days appoint the third expert to the panel and if they shall fail to do so within the period aforesaid such appointment shall (at the request of either party) be made by the Judge who is willing to serve and who is at the time senior in point of service in the United States District Court for the Southern District of Texas.

2. 9 U.S.C. §§ 1–14 (1977).

of Sections 3 and 4 of the United States Arbitration Act. The court finds that the controversy between the parties arises under a written contract involving interstate commerce of the United States. The court further finds that under the contract, all disputes and controversies are referable to a binding agreement to arbitrate that falls under the United States Arbitration Act, 9 U.S.C. §§ 1–14. The court further finds that Reliance has invoked the arbitration procedures in the contract, that Woodward has failed to comply with the terms of the agreement to arbitrate, and that all proceedings in court should be stayed pending arbitration as provided in 9 U.S.C. §§ 3 and 4. Accordingly, the court orders the parties to proceed to constitute a board of experts in accordance with the terms of the joint venture agreement dated November 12, 1980.

Woodward then filed this appeal, contesting the court's order to proceed to arbitration.

### Applicability of 9 U.S.C. §§ 1–14

Before deciding whether the appeal should be dismissed, we must first determine whether the trial court properly applied the Arbitration Act to this controversy.

In enacting § 2 of the Arbitration Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984). The Arbitration Act provides:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2 (1982).

The application of 9 U.S.C. § 2 to resolve disputes arising in state courts is limited by only two factors: (1) whether the parties agreed to submit to arbitration; and (2) whether the agreement in question involves commerce.

### 1. *Agreement to Arbitrate.*

■ Throughout these proceedings, Woodward has claimed that Article IX of the joint venture agreement is not an agreement to arbitrate, but merely an agreement to the appointment of a board of experts. Woodward claims section 9.03(c) of the agreement supports its position. Section 9.03(c) states:

The said panel of experts shall not be deemed to be arbitrators but shall render their decision as experts and the provisions of the Texas General Arbitration Act, Section 224 et seq. of the Texas General Statutes and the Law relating to arbitrators shall not apply to such experts or their determination or the procedure by which they reach their determination.

Woodward asserts that the Court must give this language its plain and literal meaning. Woodward believes that to accept the trial court's analysis that the parties agreed to submit their dispute to arbitration requires that "a specific contractual term, expressing the objective intent of the parties at the time they negotiated and executed the contract, must be rendered meaningless." Woodward interprets the contract to mean the parties agreed to the appointment of a board of experts; they did not agree to arbitration. We find that distinction unpersuasive.

The joint venture agreement stipulated that the agreement and the obligations of the joint venturers thereunder shall be interpreted, construed, and enforced in accordance with the laws of the state of Texas. Section 9.03(c) was necessarily included in the agreement because the agreement involved interstate transportation of gas, and was thus a contract involving com-

merce as defined by 9 U.S.C. § 2. Any arbitration or dispute resolution process must therefore be governed by the Arbitration Act. Texas law cannot govern dispute resolution procedures.

Woodward further claims that article IX does not contain standard arbitration language. We disagree. Section 9.01 sets out a three-step process for the appointment of a "board of experts." Section 9.02 delineates the qualifications for a member of this board. Sections 9.03(a) and (b) specifically set forth the powers and duties of the board. Section 9.03(d) mandates that the determination of the experts shall be in writing and shall be final and binding upon the parties concerned, except in the event of fraud, mistake, or miscarriage. The use of word "shall" almost 30 times in article IX weighs greatly in favor of construing this article as requiring compulsory arbitration.

Finally, Woodward denies that it agreed to submit to arbitration. Woodward directs us to *T & R Enter. v. Continental Grain Co.*, 613 F.2d 1272 (5th Cir.1980), as authority that the trial court committed reversible error when it denied Woodward a jury trial on the factual issue of its agreement to arbitrate. Woodward's reliance on this case is not appropriate. The court in *T & R Enter.* held that "the [trial] court, presumably using the same standards that would apply in any case in which a motion for directed verdict or a motion for judgment n.o.v. is considered, concluded that there was no substantial issue of fact to be submitted to a jury." *T & R Enter.*, 613 F.2d at 1277. Woodward's motion for new trial raised the issue of the court's failure to submit to a jury the issue of agreement to arbitrate. The trial court found in the motion for new trial that under the contract, all disputes were referable to a binding agreement to arbitrate. It is clear that the trial court did not believe there was "a substantial issue of fact to be submitted to a jury." We agree.

■ Woodward correctly asserts that the assignment agreement does not make any reference to a dispute resolution pro-

cess. From this assertion, however, Woodward then assumes that disagreements arising under the assignment agreement should not be subject to the joint venture agreement dispute resolution process. Paragraph 6 of the assignment agreement states:

> Woodward and NICOR (Reliance's predecessor in interest) shall use their best efforts to cause an Amendment to the Joint Venture Agreement ... to be executed by all of the parties to the Joint Venture, which shall reflect the change in ownership of the Joint Venture and shall provide for the consent of each party thereto to the assignment contemplated hereby.

In accordance with the foregoing paragraph, on the same day the assignment agreement was executed, the parties executed an amendment to the joint venture agreement that reflected the new ownership percentage of the joint venture. Immediately after the percentage ownership is set out, the amendment states:

> Except as otherwise provided herein, the Joint Venture Agreement shall continue in force and effect in accordance with its terms.

We agree with Reliance that the assignment agreement merely changed the respective ownership interests of the parties. Nothing else between the parties changed; the provisions of the joint venture agreement pertaining to dispute resolution govern this dispute.

Woodward's contention that it did not agree to submit to arbitration is overruled.

## 2. *Agreements Involving Commerce.*

■ Texas courts enforce arbitration agreements under federal law if the agreement involves commerce as defined by the Arbitration Act.[3] *Withers–Busby Group v. Surety Indus., Inc.*, 538 S.W.2d 198, 199 (Tex.App.—Houston [14th Dist.] 1976, no writ). In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court discussed whether the

---

**3.** 9 U.S.C. § 1 defines commerce as commerce   among the several States.

Arbitration Act should be applied in state courts. The Court stated:

> We would expect that if Congress, in enacting the Arbitration Act, was creating what it thought to be a procedural rule applicable only in federal courts, it would not so limit the Act to transactions involving commerce. On the other hand, Congress would need to call on the Commerce Clause if it intended the Act to apply in state courts. Yet at the same time, its reach would be limited to transactions involving interstate commerce. We therefore view the "involving commerce" requirement in § 2, not as an inexplicable limitation on the power of the federal courts, but as a necessary qualification on a statute intended to apply in state and federal courts.... [W]e cannot believe Congress intended to limit the Arbitration Act to disputes subject only to *federal*-court jurisdiction.

*Southland,* 465 U.S. at 14–15, 104 S.Ct. at 860–861 (emphasis in the original). That an arbitration agreement involves commerce is not a limitation, but a qualification, suggests that Congress intended the Arbitration Act to apply to all contracts that it constitutionally can regulate. *Snyder v Smith,* 736 F.2d 409, 418 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). The trial court correctly found that the controversy between the parties arose under a contract involving interstate commerce.

Because we find that the parties entered into an agreement to arbitrate and the agreement involves interstate commerce, the Arbitration Act is applicable to this dispute. *Snyder,* 736 F.2d at 418.

### Does Application of the Arbitration Act Require Dismissal?

Having determined that the trial court properly applied the Arbitration Act, we must now decide whether the application mandates dismissing this appeal.

The Arbitration Act provides two methods to reach arbitration. Section 3 of the Act directs the trial court to stay judicial proceedings if any issue presented therein is subject to arbitration under a written agreement to arbitrate.[4] Section 3 motions to stay are usually filed by a defendant in response to a plaintiff's attempt to litigate a dispute the defendant believes is subject to an arbitration agreement. *See, e.g., Coastal Indus., Inc. v. Automatic Steam Prod. Corp.,* 654 F.2d 375, 376 (5th Cir. 1981). Because orders disposing of section 3 motions usually will be followed by further orders confirming or denying the arbitral award, section 3 orders do not end the litigation on the merits. The Supreme Court has held, therefore, that section 3 orders are not final and appealable pursuant to 28 U.S.C. § 1291. *Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp.,* 293 U.S. 449, 451, 55 S.Ct. 313, 314, 79 L.Ed. 583 (1935), *overruled on other grounds, Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

Section 4 of the Arbitration Act provides for the establishment of an independent cause of action for specific performance of any agreement to arbitrate. It explicitly grants the trial court the authority to order arbitration of disputes governed by such agreements.[5] Section 4 envisions an independent, single issue action for specific per-

---

**4.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**5.** 9 U.S.C. § 4 provides, again in part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

formance of an agreement to arbitrate; thus, orders disposing of these petitions are appealable as final judgments. *See, e.g., Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1528 (9th Cir. 1985).

The order appealed from here is a "hybrid"—in an ongoing litigation the trial court stayed the proceedings and ordered the parties to proceed to arbitration. The Supreme Court addressed this very situation in *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935). The order in *Schoenamsgruber* granted the defendant's motion both to stay ongoing proceedings and to compel the parties to arbitrate all claims raised in their dispute. In dismissing the appeal, the Supreme Court applied its earlier decision in *Shanferoke Coal,* holding:

> An order staying judicial proceedings and directing arbitration that is entered as part of a continuing proceeding for other relief and does not result in dismissal of the action is not a final order within the meaning of 28 U.S.C. § 1291.

*Schoenamsgruber,* 294 U.S. at 457, 55 S.Ct. at 476.

The appealability of hybrid orders entered under both sections 3 and 4 of the Arbitration Act was recently discussed in *Campbell v. Dominick & Dominick, Inc.,* 872 F.2d 358 (11th Cir.1988). In *Campbell,* the eleventh circuit held that under 9 U.S.C. 15(b)(1), (2), and (3) (1988), hybrid orders are not appealable. 873 F.2d at 360. All federal courts of appeal but one have followed this rationale.[6]

■ We are aware that the trial court held its order to be final and appealable. In light of the weight of authority rejecting

this position, however, we hold that orders compelling arbitration entered in the course of ongoing actions for judicial relief on the underlying claims are not final and appealable under 28 U.S.C. § 1291. *Campbell,* 873 F.2d at 360.

Accordingly, the appeal is DISMISSED.

---

**6.** *Zosky v. Boyer,* 856 F.2d 554, 557–60 (3d Cir. 1988); *Campbell v. Dominick & Dominick, Inc.,* 863 F.2d 791, 800 (11th Cir.1988); *Quinn v. CGR,* 828 F.2d 1463 (10th Cir.1987); *Hartford Fin. Sys., Inc. v. Florida Software Serv., Inc.,* 712 F.2d 724, 728–29 (1st Cir.1983); *Whyte v. TH Consulting Group Int'l,* 659 F.2d 817, 818 (7th Cir.1981); *General Constr. Co. v. Hering Realty Co.,* 286 F.2d 641, 642 (4th Cir.1961); *Wilson Bros. v. Textile Workers Union of America,* 224 F.2d 176, 176–77 (2d Cir.1955).

For decisions holding that orders *denying* hybrid motions are not final and appealable under § 1291 *see McDonnell–Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 849 F.2d 761, 763–64 and n. 1 (2d Cir.1988); *Rauscher Pierce Refsnes, Inc. v. Birenbaum,* 860 F.2d 169 (5th Cir.1988); *Crist v. Miller,* 846 F.2d 1143, 1144–45 (7th Cir.1988); *In re Hops Antitrust Litigation,* 832 F.2d 470, 472 (8th Cir.1987).