Damaris **RIVERA** and Ana Daniel, on their own behalf and on behalf of all those similarly situated. Plaintiffs.

v.

**AT & T CORP., Defendant.**

No. 05–60970.

United States District Court, S.D. Florida.

Feb. 23, 2006.

Kevin James Kulik, Fort Lauderdale, FL, for Damaris Rivera, Ana Daniel, Plaintiffs.

Jeffrey Michael Cohen, Carlton Fields, Miami, FL, Howard Spierer, AT & T Corp, Bedminster, NJ, for AT & T Corp., a foreign corporation, Defendant.

**OMNIBUS ORDER (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS/STAY PROCEEDINGS; AND (2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT**

SEITZ, District Judge.

This litigation arises out of Plaintiffs Damaris Rivera and Ana Daniel's purchases of international calling plans from AT & T. Plaintiffs contend that AT & T billed them, and many other customers like them, for "uncompleted" telephone calls to the Republic of Cuba—including "busy tone calls, ring with no answer calls, and dead air/silence calls." Compl. ¶ 14. Arguing that AT & T has a "license to steal," they look to this Court to remedy AT & T's widespread practice of "unauthorized billing."

AT & T has not yet responded to the merits of Plaintiff's putative class-action complaint. Instead, it argues that Plaintiffs cannot seek relief in this Court because AT & T's Customer Services Agreement (the "CSA") requires them to submit all of their claims to binding arbitration. Plaintiffs disagree, stating that they never agreed to arbitrate their claims (indeed, they never even *received* a copy of the CSA). They further contend that the CSA is both procedurally and substantively unconscionable.

This matter is formally before the Court based on two motions. The first is AT & T's Motion to Compel Arbitration and Dismiss/Stay Proceedings [DE–6]. The second is Plaintiffs' Motion for Leave to File Amended Complaint [DE–30]. The Court heard argument on AT & T's Motion to Compel Arbitration on February 15, 2006. Based on the Court's review of the parties' papers and the statements of counsel at the hearing, the Court shall grant AT & T's Motion to Compel Arbitration and Dismiss/Stay Proceedings. The Court shall deny Plaintiff's Motion for Leave to File an Amended Complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The CSA and Its Relevant Provisions

Plaintiffs make the following allegations against AT & T: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.;* (2) breach of contract; (3) money had and received: (4) unjust enrichment: (5) breach of the duty of good faith and fair dealing; and (6) fraud. Plaintiffs claim that AT & T "intentionally" charged them, and other customers like them, "for uncompleted telephone calls originating from locations throughout the United States to the Republic of Cuba." ( Compl. ¶ 1.) Plaintiffs seek recovery for this allegedly unauthorized billing, including interest. (*Id.*)

AT & T responded to Plaintiffs' Complaint by filing a Motion to Compel Arbitration and Dismiss/Stay Proceedings [DE–6]. AT & T bases its motion on an arbitration clause in the CSA, which AT & T maintains established a contractual relationship with Plaintiffs. AT & T argues that, beginning August 1, 2001, the Federal Communications Commission ("FCC") required it to establish contractual relationships with its customers instead of filing tariffs with the FCC. (Def.'s Reply to Mot. to Compel 6); (*see also* Farinella

Decl.[1] ¶ 3.) In anticipation of the FCC's August 2001 deadline, AT & T issued notices in May/June 2001 to all of its current customers, apprising them of this change and including a copy of the CSA. (Def.'s Mot. to Compel 3); (*see also* Farinella Decl. ¶¶ 6–13.) The mailing included a cover letter, a copy of the CSA, and a page listing frequently asked questions ("FAQ's") about the CSA. (Farinella Decl. ¶ 6 and Exhs. 1–4 thereto.) The CSA contained the following pertinent provisions:

> BY ENROLLING IN, USING OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT. IF YOU DO NOT AGREE TO THESE PRICES, CHARGES, TERMS AND CONDITIONS, DO NOT USE THE SERVICES, AND CANCEL THE SERVICES IMMEDIATELY BY CALLING AT & T AT 1–888–288–4099 FOR FURTHER DIRECTIONS.

> • • • • •

> DISPUTE RESOLUTION.
> IT IS IMPORTANT THAT YOU READ THIS ENTIRE SECTION CAREFULLY. THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION . . . .
> **Binding Arbitration.** The arbitration process established by this section is governed by the Federal Arbitration Act

("FAA"), 9 U.S.C. §§ 1–16. You have the right to take any dispute that qualifies to small claims court rather than arbitration. All other disputes arising out of or related to this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal or equitable theory) must be resolved by final and binding arbitration. This includes any dispute based on any product, service, or advertising having a connection with this Agreement and any dispute not finally resolved by a small claims court.

> • • • • •

> NO DISPUTE MAY BE JOINED WITH ANOTHER LAWSUIT, OR IN AN ARBITRATION WITH A DISPUTE OF ANY OTHER PERSON, OR RESOLVED ON A CLASS–WIDE BASIS.

(Exh. 1 to Farinella Decl.) (emphases and font style in original).

### B. AT & T's Mailings of the CSA to Plaintiffs When They Purchase a Calling Plan

AT & T states that it mailed CSAs to Plaintiff Rivera on three occasions. When Plaintiff Rivera purchased a calling plan in 2002, AT & T sent her the CSA via regular mail on January 30, 2002 to 1500 Presidential Way, Apt. 105, West Palm Beach, FL 33401. (Farinella Decl. ¶ 14); (Suppl. Farinella Decl.[2] ¶¶ 5–7 and Exh. C thereto.) Rivera has admitted that she purchased one of AT & T's calling plans in 2002, that the Presidential Way address was her correct address at the time of purchase, and that she did not discontinue AT & T service at this address until more than a year and a half later (July 2003).[3]

---

1. "Farinella Decl." refers to the Declaration of Mark J. Farinella, submitted in support of AT & T's Motion to Compel Arbitration.

2. "Suppl. Farinella Decl." refers to the Supplemental Declaration of Mark J. Farinella, submitted in support of AT & T's reply to

Plaintiff's opposition to the Motion to Compel Arbitration.

3. Although Rivera claims that AT & T sent the CSA to the wrong address because the first Farinella Declaration states that her address was "1500 West Presidential Way" instead of

(Rivera Aff.[4] ¶¶ 4, 10, 19.) AT & T mailed another CSA to Plaintiff Rivera at the Presidential Way address on June 4, 2003. (Farinella Decl. ¶ 14); (Suppl. Farinella Decl. ¶¶ 5–7 and Exh. C thereto.) AT & T has no record of the return of either of these mailings. (Farinella Decl. ¶ 14); (Suppl. Farinella Decl. ¶ 7.) Finally, AT & T states that it mailed a CSA to Plaintiff Rivera a third time, on August 13, 2003, when she changed residences and switched service. Exhibit D to the Supplemental Farinella Declaration shows that the mailing was sent to Plaintiff Rivera at 9340 S.W. 23rd Street, Apt. 4303, Plantation, FL 33324. (Suppl. Farninella Decl. ¶ 7.) However, Plaintiff Rivera states that she lived in Ft. Lauderdale, after disconnecting service at her West Palm Beach address in July 2003. (Rivera Aff. ¶¶ 10, 12.) AT & T has no record of the return of this mailing. (Suppl. Farinella Decl. ¶ 7.)

AT & T states that it mailed a CSA to Plaintiff Daniel on June 28, 2001, to 2581 Barkley Drive West, Apt. E, West Palm Beach, FL 33415. (Farinella Decl. ¶ 14): (Suppl. Farinella Decl. ¶¶ 5, 8 and Exh. D thereto.) Plaintiff Daniel has not argued that this was an incorrect address. (*See generally* Daniel Aff.[5]) AT & T has no record of the return of this mailing. (Farinella Decl. ¶ 14); (Suppl. Farinella Decl. ¶ 8.)

## C. The CSA's Inclusion in Monthly Telephone Bills

AT & T also states that it included in its monthly billing statements to its customers the following message regarding the CSA:

Important information about your telephone service.

AT & T Consumer Services Agreement In the past. AT & T filed information about our long-distance services with the FCC. In keeping with recent FCC rulings, we are instead providing this information directly to our customers in the new AT & T Consumer Services Agreement.

The Agreement took effect on August 1, 2001. It covers AT & T state-to-state and international long-distance consumer calling services, and explains the relationship between you and AT & T, as well as each of our rights and responsibilities, including billing and payment. It also describes our new binding arbitration process, which uses an objective third party rather than a jury for resolving disputes that may arise. You accept the terms of the Agreement simply by continuing to use or pay for any AT & T consumer calling service covered under the Agreement.

\* \* \* \* \* \*

If you have not yet received a copy of the AT & T Consumer Services Agreement, you can access it at *http:// www.att.com/ serviceguide/home* or call us at 1 888 288 4099 to request a copy of the Agreement.

(Def.'s Reply to Mot. to Compel 4–5); (Suppl. Farinella Decl. ¶ 10.) AT & T has not included a copy of Plaintiffs' bills showing this message, because by 2004 at the latest, AT & T deleted these records from its systems.[6] (Suppl. Farinella

---

"1500 Presidential Way," Mr. Farinella corrected this typographical error in his supplemental declaration.

**4.** "Rivera Aff." refers to the Sworn Affidavit of Damaris Rivera, submitted in support of her opposition to Defendant's Motion to Compel Arbitration.

**5.** "Daniel Aff." refers to the Sworn Affidavit of Ana Daniel, submitted in support of her opposition to Defendant's Motion to Compel Arbitration.

**6.** Pursuant to 47 C.F.R. § 42.6, AT & T must retain billing and call detail records for eighteen months only. (Suppl. Farinella Decl. ¶ 9.)

Decl. ¶ 9.)

Plaintiff Daniel does not specify whether or not she received her bills directly through AT & T or through her local telephone carrier. Plaintiff Rivera has stated that she

> never received a CSA because, at the time [she] orally agreed to use AT & T, the only phone bill [she] received was from [her] local provider, Bell South, which contained a section noting: 'This portion of your bill is provided as a service to AT & T.'

(Suppl. Rivera Aff.[7] ¶ 19.) To dispute Plaintiff's assertion, AT & T has offered evidence of its agreement with Bell South, pursuant to which Bell South included various AT & T messages in its monthly phone bills. (Spierer Decl.[8] ¶¶ 4–7 and Exhs. A–D thereto.) AT & T has offered a copy of its actual message included in Bell South's November and December 2001 bills for Florida customers:

> The AT & T Consumer Services Agreement covers AT & T state-to-state and international long distance consumer calling services and explains the relationship between you and AT & T, as well as each of our rights and responsibilities, including billing and payment. It also describes our new binding arbitration process, which uses an objective third party rather than a jury for resolving disputes that may arise. You accept the terms of the Agreement simply by continuing to use or pay for any AT & T consumer calling service covered under the Agreement. Your AT & T service or billing will not change under the agreement, there's nothing you need to do to continue your current service with us. If you do not have a copy of the

Agreement you can access it at *http://www.att.com/ serviceguide/home*, or call us at 1 888–288–4099.

(Exhs. F and G to Spierer Decl.) AT & T also has stated that its "practice of using Bell South for billing, collection and messaging to AT & T customers continues through this date," and has provided a section of a December 28, 2005 bill for a Bell South customer in North Carolina, showing the AT & T bill message that Bell South delivered that month to AT & T's customers. (Spierer Decl. ¶ 7 and Exh. G thereto.)

It is undisputed that Plaintiffs Rivera and Daniel did not sign AT & T's CSA.[9] (*See generally* Rivera Aff.); (*see also* Daniel Aff.); (Def.'s Resp. to Pl.'s Mot. for Leave to File Am. Compl. 11.) Further, both Plaintiffs deny ever having received a CSA. (Rivera Aff. ¶¶ 11, 12, 14, 16–17); (Daniel Aff. ¶¶ 3, 4.) Plaintiffs make three arguments as to why this Court should deny the instant motion to compel arbitration: (1) because the CSA does not govern billing for "non-phone calls," it does not apply to the substance of this lawsuit; (2) Plaintiffs never agreed to arbitrate their claims; and (3) even if the CSA does bind Plaintiffs, the arbitration provision is substantively and procedurally unconscionable. In response, AT & T states that Plaintiffs agreed to the CSA by continuing to use their AT & T services, and that the Federal Communications Act (the "Act"). 47 U.S.C. §§ 201–202, preempts Plaintiffs' assertion of unconscionability under state law.

## II. LEGAL STANDARD

 Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a district

---

7. "Suppl. Rivera Aff." refers to the Supplemental Affidavit of Damaris Rivera.

8. "Spierer Decl." refers to the Declaration of Howard Spierer, filed on February 16, 2006.

9. Plaintiffs assert that they never signed a CSA, and AT & T has neither introduced into evidence Plaintiffs' signatures on a CSA nor contended that Plaintiffs actually signed a CSA.

court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. 9 U.S.C. §§ 2, 3. However, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against the parties. *Id.* § 4; *Chastain v. The Robinson–Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir.1992) (citing *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)) (holding that if the making of an arbitration agreement is in issue, "the federal court may proceed to adjudicate it"). Because "parties cannot be forced to submit to arbitration if they have not agreed to do so." a court must determine whether such an agreement exists. *Chastain*, 957 F.2d at 854.

■ The heart of the matter before this Court is the legal effect of the CSA, in the absence of Plaintiffs' signatures. "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Id.* However,

> [t]he calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have

agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

*Id.* To entitle the party seeking to avoid arbitration to a jury trial on the arbitrability question, that party must unequivocally deny an agreement to arbitrate, as well as produce "some" evidence to substantiate the denial. *Id.* (citing *T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980)).[10]

## III. DISCUSSION

### A. AT & T's Motion to Compel Arbitration and Dismiss/Stay Proceedings

1. *Brief Discussion of Cases Addressing the CSA's Arbitration Provision.*[11]

Several courts have already addressed the arbitration provision in AT & T's CSA. For example, in *Boomer v. AT & T Corp.*, 309 F.3d 404, 424 (7th Cir.2002), the Seventh Circuit found the arbitration clause in the CSA to be binding on AT & T customers. Plaintiff Boomer alleged that AT & T overcharged its customers for contributions to the federal Universal Services Fund. *Id.* at 408. He filed suit in the Northern District of Illinois and defended against AT & T's motion to compel arbitration by claiming that the CSA was not a valid contract, and even if it were, the arbitration clause contained therein was unconscionable. *Id.* at 414.

---

10. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent pre–1981 decisions of the former Fifth Circuit.

11. Although this discussion does not contain an exhaustive list of the cases to address AT & T's CSA, the parties have not cited, and the Court has not found, any cases from the Eleventh Circuit dealing with the CSA.

In support of its motion to compel arbitration, AT & T established that it had mailed to Boomer the CSA and accompanying documents, that it never received notice of the mailing's return, and that Boomer continued to be an AT & T customer after receiving the CSA.[12] *Id.* at 411. The Court found that (1) Boomer had a reasonable opportunity to reject the offer, but instead continued to use his AT & T services; and (2) sections 201 and 202 of the Federal Communications Act preempted Boomer's state-law claims of unconscionability, because they demonstrated a "[C]ongressional intent that customers of individual long-distance carriers receive uniform terms and conditions of service," and "allowing a state law challenge to the CSA's arbitration clause would result in customers receiving different terms based on their locality." *Id.* at 415–16, 418.

In 2003. the United States District Court for the District of Massachusetts followed the Seventh Circuit's *Boomer* decision when confronted with AT & T's CSA. *Kisala v. AT & T Corp.*, No. 02–CV–10752–MEL (D.Mass. Jan. 15, 2003). The court granted AT & T's motion to compel arbitration on the grounds that the plaintiffs had received the AT & T notice containing the arbitration provision, the CSA was a proper contract, and state law did not apply, because the issue was preempted. *Id.* at 7. However, in *Ting v. AT&T Corp.*, 319 F.3d 1126, 1152 (9th Cir.2003), the Ninth Circuit reached the opposite conclusion and criticized the *Boomer* decision. The *Ting* court held that the CSA's arbitration provisions were "unenforceable as unconscionable under California law, the application of which is not preempted by §§ 201(b) and 202(a) of the Federal Communications Act."

**2.** *Plaintiff's Argument That the CSA Does Not Apply to the Substance of This Lawsuit Because It Does Not Govern Billing for "Non–Phone Calls" Lacks Merit.*

As previously discussed, AT & T has moved to compel arbitration of Plaintiffs' claims against it, including all claims on behalf of others similarly situated, based on provisions contained in its CSA. At the February 15, 2006 hearing, Plaintiffs raised for the first time the argument that the CSA does not apply to the substance of this lawsuit, because it does not govern billing for "non-phone calls"—for example, "busy tone calls, ring with no answer calls, and dead air/silence calls." Compl. ¶ 14. Although Plaintiffs insisted that this argument appeared in their opposition to AT & T's Motion to Compel Arbitration. it did not. The argument lacks merit.

 The CSA includes the following pertinent provisions:

**BY ENROLLING IN, USING, OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT. IF YOU DO NOT AGREE TO THESE PRICES, CHARGES, TERMS AND CONDITIONS, DO NOT USE THE SERVICES, AND CANCEL THE SERVICES IMMEDIATELY BY CALLING AT & t AT 1–888–288–4099 FOR FURTHER DIRECTIONS.**
'Service' or 'services' means: (1) the AT & T state-to-state and international consumer telecommunications services you are enrolled in. use, or pay for that AT & T provided to you under tariffs filed with the Federal Communications Commission as of July 31, 2001; and (2) any new or additional AT & T state-to-state and international consumer telecommu-

---

**12.** Boomer did not dispute receiving the CSA.

nications services that you enroll in, use or pay for, after July 31, 2001.

(Exh. 1 to Farinella Decl.) (emphases and font style in original). The charges Plaintiffs dispute are for "busy tone calls, ring with no answer calls, and dead air/silence calls" that occurred *when Plaintiffs were trying to make legitimate, completed phone calls to Cuba. using the AT & T international calling plans they purchased.* Put another way. Plaintiffs used the service they purchased, but now dispute certain charges because the service allegedly never completed the phone calls for which they were charged. The charges in dispute come within the CSA's clear definition of "service." Accordingly, the CSA applies.

### 3. *The Arbitration Clause in AT & T's CSA Binds Plaintiffs.*

It is undisputed that Plaintiffs Rivera and Daniel did not sign a CSA. (*See generally* Rivera Decl.); (*see also* Daniel Decl.); (Def.'s Resp. to Pl.'s Mot. for Leave to File Am. Compl. 11.) Accordingly, this Court must determine whether or not the unsigned arbitration provision can bind them.

▮ Plaintiffs have denied their agreement to arbitrate their claims against AT & T, thereby meeting the first prong of the *Chastain/T & R* test. However, Plaintiffs have not introduced evidence to sub-stantiate their denial. *See Chastain,* 957 F.2d at 855–56 (district court ordered to proceed to trial on arbitrability question where plaintiff asserted that (1) someone forged her signature on the arbitration agreement (which Defendant conceded); and (2) she did not provide a power of attorney to her father to assent to arbitration on her behalf). In response to AT & T's evidence that it mailed a CSA to Plaintiffs which never returned to AT & T, Plaintiffs simply state that they never received the CSA.[13] This is insufficient to send the arbitrability question to a jury. *See id.; see also Barnett v. Okeechobee Hosp.,* 283 F.3d 1232, 1239 (11th Cir.2002) ("[T]he common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee.") (internal citations omitted). Moreover, AT & T has offered evidence that it included notices about the CSA in its own monthly billing statements, as well as those distributed by Bell South. (Def.'s Reply to Mot. to Compel 4–5); (Suppl. Farinella Decl. ¶ 10.); (Spierer Decl.[14] ¶¶ 4–9 and Exhs. A–G thereto.) Finally, Plaintiff Rivera admits that she continued AT & T service for more than a year and half after AT & T mailed her a CSA, and Plaintiff Daniel offers no evidence as to when or if she discontinued service. (Rivera Decl. ¶¶ 4, 10, 19.) Plaintiffs have not

---

**13.** Plaintiff Rivera also states that the AT & T customer service representative from whom she purchased her calling plan over the telephone "neither mentioned nor explained any arbitration agreement." (Rivera Aff. ¶¶ 5–6.) However, this point is not dispositive. Commercial transactions occur every day in which people pay for products with terms to follow—terms about which they did not learn when placing their order. *See, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *see also Hill v. Gateway 2000,* 105 F.3d 1147 (7th Cir.1997); *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447 (7th Cir.1996). The Seventh Circuit has stated:

> If the staff at the other end of the phone for direct-sales operations such as Gateway's had to read the four-page statement of terms before taking the buyer's credit card number, the droning voice would anesthetize rather than enlighten many potential buyers. Others would hang up in a rage over the waste of their time. And oral recitation would not avoid customers' assertions (whether true or feigned) that the clerk did not read term X to them, or that they did not remember or understand it. *Hill,* 105 F.3d at 1149.

**14.** "Spierer Decl." refers to the Declaration of Howard Spierer, filed on February 16, 2006.

met their burden, thus the CSA binds Plaintiffs.

4. *This Court Need Not Reach the Issue of Preemption, Because Even If the Federal Communications Act Does Not Prevent State–Law Challenges to the CSA. Those State–Law Challenges Would Fail.*

Plaintiff has argued that the CSA is both substantively and procedurally unconscionable, primarily relying on the Ninth Circuit's decision in *Ting*. AT & T has argued that the Act preempts any state-law challenges to the CSA (relying on the Seventh Circuit's *Boomer* decision), and that if it does not, Plaintiff's state-law challenges would still fail. This Court need not address whether or not it would follow the *Boomer* or *Ting* decisions in assessing whether the Act preempts state-law challenges to the CSA, because such a challenge would ultimately fail under Florida law.

■■■ To succeed on a claim of unconscionability, a plaintiff must show both procedural and substantive unconscionability. *Complete Interiors, Inc. v. Behan,* 558 So.2d 48, 52 (Fla. 5th DCA 1990). To determine procedural unconscionability. "a court must look to the circumstances surrounding the transaction to determine whether the complaining party had a meaningful choice at the time the contract was entered." *Gainesville Health Care Center, Inc. v. Weston,* 857 So.2d 278, 285 (Fla. 1st DCA 2003) (internal quotations omitted). "To determine whether a contract is substantively unconscionable, a court must look to the terms of the contract, itself, and determine whether they are so outrageously unfair as to shock the

judicial conscience." *Id.* at 284–85. The case law provides no direction requiring this Court to address one component of unconscionability before the other. *See Fonte v. AT&T Wireless Services,* 903 So.2d 1019, 1025 (Fla. 4th DCA 2005). Accordingly, the Court first addresses procedural unconscionability and then substantive unconscionability.

a. Procedural unconscionability

Plaintiffs argue that the CSA is a contract of adhesion.[15] and therefore, procedurally unconscionable. They cite to the Florida Court of Appeal's decision in *Powertel* for this proposition. However, the *Powertel* court did not find that, because the at-issue arbitration agreement was an adhesion contract, it automatically was procedurally unconscionable, *Id.* at 574 ("Although not dispositive of this point, it is significant that the arbitration clause is an adhesion contract.") Other, important facts contributed to the *Powertel* court's finding, and they serve to distinguish *Powertel* from the instant case. Powertel's customers had already purchased equipment that worked only with Powertel wireless telephone service, and they had obtained telephone numbers that could not transfer to a new provider. *Id.* at 575. Further, Powertel did not specifically call attention to its new arbitration clause, such that many (if not all) customers likely did not know it existed. *Id.*

■■■ By contrast, AT & T prominently disclosed the existence of the arbitration provision through separate cover letters to its customers and through a "FAQ" page concerning the CSA. (Exh. 1 to Farinella Dect.) AT & T also used bold-faced, all-

---

**15.** An adhesion contract is a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." *Powertel, Inc. v. Bexley,* 743 So.2d 570, 574 (Fla. 1st DCA 1991).

caps print to delineate the arbitration clause from the rest of the agreement. (*See id.*) Moreover, Plaintiffs have offered no evidence that they made an investment in AT & T equipment or that they lacked other alternatives for telephone service. Indeed, AT & T gave Plaintiffs an opportunity to reject the CSA and to choose service with another carrier. (*See* Exh. 1 to Farinella Decl.) Thus. Plaintiffs' reliance on *Powertel* is misplaced. *See Fonte,* 903 So.2d at 1026 (distinguishing *Powertel* on the same grounds); *Orkin Exterminating Co. v. Petsch,* 872 So.2d 259, 265 (Fla. 2d DCA 2004) (form contract containing arbitration provision neither procedurally nor substantively unconscionable). The CSA is not procedurally unconscionable.

### b. Substantive unconscionability

Plaintiffs also contend that the CSA is substantively unconscionable. They argue that the CSA is "substantively unconscionable because it requires customers to give up many specific legal remedies." (Opp'n to Mot. to Compel Arbitration 12.) The Court disagrees.

 The only specific legal remedy about which Plaintiffs appear concerned is the ability to sue AT & T on a class-wide basis. However, the Eleventh Circuit has held that arbitration agreements precluding class-action relief are valid and enforceable. *Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 877 (11th Cir.2005) (citing *Randolph v. Green Tree Fin. Corp.,* 244 F.3d 814, 819 (11th Cir. 2001)). In *Randolph,* the court of appeals held that a contractual provision to arbitrate claims under the Truth in Lending Act ("TILA") is enforceable, "even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA." *Randolph,* 244 F.3d

at 819. The Eleventh Circuit noted that TILA provides for enforcement by administrative agencies, and it contains other incentives for bringing TILA claims—such as statutory damages and attorneys' fees. *Id.* at 818.

 Here, the CSA provides for relief in small claims court as an alternative to arbitration, and allows Plaintiffs to seek attorneys' fees if authorized by applicable substantive law.[16] (Exh. 1 to Farinella Decl.) Federal law provides for a third option: an individual may file a complaint with the Federal Communications Commission, which shall investigate the matter to determine any wrongdoing. *See* 47 U.S.C. §§ 207. 208. Further, the Attorney General may act on behalf of citizens allegedly wronged by a telephone carrier. *See* 18 U.S.C. § 1964(b) (providing that the Attorney General may institute proceedings against a particular defendant for RICO violations). Because arbitration agreements precluding class-action relief are enforceable and Plaintiffs have other forums within which to seek a remedy for AT & T's allegedly unlawful billing practice, the Court finds that the CSA is not substantively unconscionable.

### B. Plaintiffs' Motion for Leave to Amend Complaint

Plaintiffs filed a Motion for Leave to Amend Complaint on November 23, 2005, more than two months following the close of the briefing schedule for AT & T's Motion to Compel Arbitration. Plaintiffs seek to allege, among other things, that they entered an oral rather than written contract with AT & T for telephone service and that they never orally agreed to arbitrate their claims. (Pls.' Mot. for Leave to Amend Compl. ¶¶ 3–6; Proposed Am.

---

**16.** For example, the RICO statute, under which Plaintiffs have brought one of their claims against AT & T, allows individuals to seek attorneys' fees and also contains a treble damages remedy. 18 U.S.C. § 1964(c).

Compl. ¶¶ 20, 40.) Plaintiffs further seek to allege that AT & T never provided them with a written agreement containing an arbitration provision, and that they never signed such an agreement. (Proposed Am. Compl. ¶¶ 1, 20, 40, 41.) Finally, Plaintiffs seek to allege that, if consumers did receive the CSA, it was "only stealthily provided" and "induced by fraud." (*Id.* ¶¶ 1, 10H.)

■ Federal Rule of Civil Procedure 15 provides that a party seeking to amend its complaint more than twenty days after service must seek leave of court or the adverse party's written consent. Fed. R.Civ.P. 15(a). The rule also provides that "leave shall be freely given when justice so requires." *Id.* However, "[p]ermission may be denied where leave would cause undue delay or prejudice to the opposing party, where prior amendments have failed to cure deficiencies, or if the motive of the amendment is dilatory." *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir.1985). A court may also deny leave to amend where the amendment would be futile. *Id.* at 444–45.

First, it is noteworthy that Plaintiffs did not file their motion to amend their complaint until after they had reviewed Defendants' papers and evidence supporting the motion to compel arbitration. Plaintiffs' attempt to avoid arbitration by amending their complaint to include non-arbitrable claims is without merit. The new allegations are insufficient to avoid arbitration.

Plaintiffs wish to add allegations denying receipt of AT & T's CSA. Plaintiffs have already raised these issues in their opposition to AT & T's Motion to Compel Arbitration. The Court has addressed Plaintiff's denial in Section III. A of this Order and has explained how this denial does not prevent arbitration of Plaintiffs' claims. Adding this allegation to an amended complaint will not change this result. Moreover, as the Court further

explained in Section III, A of this Order, Plaintiff Rivera's assertion that she never orally agreed to an arbitration agreement during her telephone conversation with the AT & T telemarketer who sold her an AT & T calling plan is not dispositive and will not change the result.

■ Plaintiffs also now wish to allege that the CSA was "only stealthily provided to" consumers, and that AT & T "induc[ed] any such 'agreement' by fraud." (Pls.' Am. Compl. ¶ 1.) Plaintiffs' position appears to be that this Court must decide a claim of fraud in the inducement of a contract containing an arbitration provision. This argument requires only a citation to *Prima Paint Corp.*, 388 U.S. at 403–404, 87 S.Ct. 1801, which held that an *arbitrator* must hear charges of fraud in the inducement of a contract containing an arbitration clause. Plaintiffs have not included any allegations in their proposed amended complaint that AT & T fraudulently induced its customers' agreement to the arbitration clause itself—separate and apart from the CSA. Accordingly, amending the complaint to include an allegation of fraud in the inducement with respect to the CSA will not avoid arbitration. *See id.* Plaintiffs' Motion for Leave to Amend Complaint must be denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

(1) AT & T's Motion to Compel Arbitration and Dismiss/Stay Proceedings [DE–6] is GRANTED. Pursuant to 9 U.S.C. § 3, all further proceedings in this case are STAYED. Plaintiffs Rivera and Daniel must individually pursue their claims against AT & T according to the arbitration procedure set forth in the CSA:

(2) Plaintiffs' Motion for Leave to File Amended Complaint [DE–30] is DENIED;

(3) All pending motions not otherwise discussed in this Order are DENIED AS MOOT; and

(4) This case is CLOSED FOR AD-MINISTRATIVE PURPOSES.