**Brenda Susan CHASTAIN, Plaintiff–Appellee,**

v.

**The ROBINSON–HUMPHREY COMPANY, INC., Defendant–Appellant.**

No. 90–8885.

United States Court of Appeals, Eleventh Circuit.

April 9, 1992.

---

852

Kirk M. McAlpin, Jr., J. Stuart Teague, Jr., Atlanta, Ga., Robert S. Martin, Jr., Columbus, Ga., Louise B. Matte, Peterson, Dillard, Young, Self & Asselin, Atlanta, Ga., for defendant-appellant.

James D. Patrick, Columbus, Ga., for plaintiff-appellee.

Before FAY and BIRCH, Circuit Judges, and HOFFMAN *, Senior District Judge.

BIRCH, Circuit Judge:

This case construes the Federal Arbitration Act, 9 U.S.C. §§ 1–15 (1988) ("Act"). Relying upon the Act, Appellant Robinson–Humphrey Company, Inc. ("Robinson–Humphrey" or "company"), moved to compel the arbitration of Brenda Susan Chastain's securities claims against the company. The United States District Court for the Middle District of Georgia denied Robinson–Humphrey's motion for immediate arbitration, implicitly ruling that the Act proscribed compelling arbitration unless the district court first determined that Chastain was contractually obligated to submit to arbitration. Because on the unusual facts of this case we believe that "the making of the arbitration agreement ... [is] in issue," *id.* § 4, we AFFIRM the

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

district court's order. Chastain is entitled to have the district court, rather than a panel of arbitrators, determine whether or not she agreed to arbitrate her claims against Robinson–Humphrey.

## I. BACKGROUND

This case begins with Brenda Chastain's father, Dr. J.B. Chastain. In June 1979, Dr. Chastain opened a securities trading account with Robinson–Humphrey, allegedly on behalf of his daughter. In connection with this account, two customer agreements were executed. The first agreement was signed in 1979, bearing the name Brenda Susan Chastain. However, it is undisputed that Brenda Chastain did not personally sign this customer agreement. Although there is some speculation that an employee of Dr. Chastain signed Brenda Chastain's name on the agreement, the parties cannot ascertain the actual author of the signature. In addition, Brenda Chastain never signed a power of attorney in connection with this securities account at Robinson–Humphrey. The second customer agreement, signed in 1982, bears Dr. Chastain's name only. Both agreements contain arbitration clauses, broadly binding the contractual parties to arbitrate any disputes arising in connection with the account.

A dispute relating to the securities account did arise. In September 1985, Brenda Chastain filed a variety of securities fraud claims against Robinson–Humphrey in Georgia state court. Chastain's complaint alleged that the company illegally opened and maintained a securities trading account in her name, engaged in illegal churning on the account, and fraudulently induced her to pay· her father's indebtedness under the account. After Chastain's case was removed to federal court, Robinson–Humphrey asked the district court to compel arbitration of Chastain's allegations. The company cited the broad arbitration clauses contained in the 1979 and 1982 customer agreements.

Chastain's response to the motion to compel arbitration included a detailed affidavit. In her affidavit, Chastain claimed that she never agreed to either the customer agreements or the arbitration clauses, that her signature on the 1979 agreement was a forgery, that she never signed the 1982 agreement, and that she never gave her father the authority· to bind her in connection with the securities account at Robinson–Humphrey. The company now admits that Brenda Chastain did not sign either customer agreement containing the arbitration language.

The district court denied.Robinson–Humphrey's motion to compel arbitration. In doing so, the court expressed doubt about the existence of a valid and enforceable contract mandating arbitration:

> The Defendant [Robinson–Humphrey] has filed a motion ... for an order compelling arbitration ·of the [securities] issue[s] pursuant to language contained in a customer agreement which ·contained an arbitration clause. The· Plaintiff [Brenda Chastain] by affidavit states that she did not sign the agreement and did not authorize anyone to affix her signature. Indeed, the Defendant now admits that the signature on the [1979] agreement is not the signature of the Plaintiff. In this situation it would not be proper· for the Court to mandate arbitration.

R2–42–1. It is important to emphasize that the district court did not express a view on *the merits* of the arbitrability question. Rather, it only ruled upon *who should decide* the merits of the arbitrability question. In other words, the district court did not decide that Chastain could not *in fact* be bound by the arbitration clauses of the customer agreements. The district court only determined that Chastain's duty to arbitrate would be decided by the district court, rather than being decided by an arbitration panel. It is this determination that we now review on appeal.

## II. DISCUSSION

■ The Federal Arbitration Act governs the question of who must decide issues of arbitrability. Under the Act, a district court must compel arbitration if the parties have agreed to arbitrate their dis-

pute. 9 U.S.C. §§ 2, 3 (1988). However, if the validity of the agreement to arbitrate is in issue, a district court, not a panel of arbitrators, must decide if the arbitration clause is enforceable against the parties. *Id.* § 4; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (holding that if the making of the arbitration agreement is an issue "the federal court may proceed to adjudicate it"). Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so. *Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir.1990) (per curiam). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

■ Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. *See T & R Enters. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980).[1] Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general. See Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. at 1806. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests. *Id.*

The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is

challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate.* Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language. *See Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986) (per curiam) ("[W]here the allegation is one of . . . ineffective assent to the contract, the issue [of arbitrability] is not subject to resolution pursuant to an arbitration clause contained in the contract documents.").

In cases of this type, the proper rule has been stated by our predecessor court:

"To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial."

*T & R*, 613 F.2d at 1278 (quoting *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir.1945)); *see also Cancanon*, 805 F.2d at 1000–01 (finding that the party desiring a trial on the enforceability of an arbitration agreement met the burdens under the *T & R* test). Given this test, it is clear that Chastain is entitled to a trial on the issue of whether or not she is bound by the customer agreements. Her affidavit unequivocally denies the existence of any agreement with Robinson–Humphrey. In addition, Chastain has much more than "some evidence" to substantiate her denial. Chastain has Robinson–Humphrey's concession that Chastain never personally signed the customer agreements.

---

1. This court follows pre–1981 decisions of the former Fifth Circuit. *Bonner v. City of Prich-*ard, 661 F.2d 1206, 1209 (11th Cir.1981).

We hold that these facts are sufficient to put "the making of the arbitration agreement ... in issue," 9 U.S.C. § 4 (1988), thereby requiring the district court to determine the validity of the customer agreements before compelling Chastain to submit her securities claims to arbitration. *See Cancanon,* 805 F.2d at 1000 (relying upon *T & R* in stating parenthetically that "where signatures were lacking, issue of existence of agreement could not be resolved pursuant to arbitration clause"). Therefore, the district court's denial of Robinson–Humphrey's motion to compel arbitration was proper. The court correctly rejected Robinson–Humphrey's argument that a panel of arbitrators—rather than the district court itself—should decide whether or not Chastain can be bound by the customer agreements.

Robinson–Humphrey's reliance upon the Supreme Court's decision in *Prima Paint* is misplaced. Granted, that decision does hold that an arbitration panel (not a district court) must resolve the allegation that a party cannot be compelled to arbitrate because that party was fraudulently induced into signing the contract containing the arbitration clause. 388 U.S. at 403–04, 87 S.Ct. at 1806. This court also recognizes that the *Prima Paint* doctrine has been extended to require arbitration panels to decide many issues regarding the validity of a contract containing arbitration language—including allegations that such contracts are voidable because they involved duress, undue coercion, confusion, mutual mistake, or unconscionability. *See, e.g., Coleman v. Prudential Bache Sec., Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986) (per curiam); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 637 F.2d 391, 398 (5th Cir. Unit B Feb. 1981).

However, *Prima Paint* has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract *never existed at all. See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 1136, 1140 (9th Cir.1991). Here, Robinson–Humphrey is arguing that Chastain must arbitrate because of a purported contract which *indisputably* lacks the formalities

necessary to signal Chastain's *ex ante* assent to the agreement as a whole. Clearly, the trigger of the court's power to compel arbitration in cases like *Prima Paint, Coleman,* and *Haydu*—the existence of a presumptively valid arbitration agreement contained within a contract signed by the parties—is entirely absent in this case. *See Cancanon,* 805 F.2d at 1000; *Three Valleys,* 925 F.2d at 1140–41. Therefore, *Prima Paint* does not govern our decision.

■ Nor is Robinson–Humphrey's specter of contractual parties lying to avoid arbitration sufficient to influence our construction of the Federal Arbitration Act. A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable. *See Cancanon,* 805 F.2d at 1000–01; *T & R,* 613 F.2d at 1278. Here, Robinson–Humphrey's concession that it did not obtain Chastain's signature or a power of attorney adequately substantiates Chastain's denial of entering into a contract. If such admissions were insufficient to entitle Chastain to a trial on the issue of her duty to arbitrate, we would invite a far more realistic fear:

> Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in *any* arbitration.

*Three Valleys,* 925 F.2d at 1140. Therefore, at least on the question of whether an arbitrator should determine if Chastain is bound by the customer agreements, we agree with Chastain: "No power of attorney plus a forged signature of Ms. Chastain equals no arbitration." Appellee Br. at 7.

Finally, Robinson–Humphrey also argues before this court that Chastain is indeed bound by the customer agreements. The company has two theories. First, Robin-

**856**

son–Humphrey argues that Chastain's father had the authority to bind his daughter when the 1979 agreement was executed. Second, the company contends that Brenda Chastain ratified the customer agreements by her conduct after she learned of the existence of the securities trading account. We express no view on the merits of these arguments. We note only that these arguments are not pertinent to the issue before this court; namely, *who must decide* the merits of these arguments—arbitrator or district court.

Of course, Robinson–Humphrey remains free to address these arguments to the district court. Indeed, the two issues pressed by the company—whether a party has authority to bind another to an arbitration agreement and whether a party can ratify an arbitration agreement by her conduct—should ordinarily be decided in the trial court *before* final resolution of a motion to compel arbitration. *See, e.g., Cancanon,* 805 F.2d at 1000 & n. 4; *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54–55 (3d Cir.1980); *Interocean Shipping Co. v. National Shipping and Trading Corp.,* 462 F.2d 673, 677 (2d Cir. 1972); *Dougherty v. Mieczkowski,* 661 F.Supp. 267, 274–75 (D.Del.1987). The district court may find merit in Robinson–Humphrey's arguments and subsequently order Chastain to submit her securities allegations to arbitration. Until that time, however, the district court has no authority to compel the arbitration of Chastain's complaints.

AFFIRMED. Pursuant to 9 U.S.C. § 4 (1988), the district court should proceed immediately to a trial on the issue of whether or not Brenda Chastain is bound by the arbitration language in the customer agreements.[2]

---

**2.** Chastain's alternative argument—that the arbitration clauses in the securities contracts are unenforceable because of Securities Exchange Commission Rule 15c2–2, 17 C.F.R. § 240.15c2–2 (rescinded Oct. 1987)—is foreclosed by our decision in *Adrian v. Smith Barney, Harris, Upham & Co.,* 841 F.2d 1059, 1061–62 (11th Cir. 1988). Because the agreements at issue in this case do not expressly exempt federal securities disputes from arbitration, we believe that *Blue Gray Corps. I & II v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 921 F.2d 267, 269–71 (11th Cir.1991), is inapposite.