This matter arises out of a dispute between plaintiff, Vibration Instrumentation Consultants, Inc. ("VICO"), and defendants, IRD Mechanalysis, Inc. ("IRD"), IRD's former parent company, Dobson Parks Industries, IRD's successor corporation, Entek IRD International Corporation ("Entek"), and several individual defendants employed by IRD and Entek. For convenience, defendants will be collectively referred to as "IRD."
On November 19, 1997, VICO commenced this action in the Franklin County Court of Common Pleas alleging the IRD defendants had breached a November 1995 sales and service contract and a subsequent April 1996 memorandum of understanding between the parties. The November 7, 1995 sales and service agreement was originally executed by VICO and IRD Mechanalysis, and granted VICO an exclusive right to sell IRD's products within the territorial boundaries of Connecticut, Delaware, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, Vermont, Virginia, and West Virginia. This agreement also delegated to VICO the responsibility to perform technical sales support for IRD's customers throughout Mexico, Canada and the United States.
In April 1996 VICO notified IRD of its belief that IRD had breached certain provisions of the sales and service agreement. Specifically, VICO served IRD with a document entitled "notice and claim of breach of contract and demand for liquidated damages," in which VICO alleged that IRD had: (1) failed to provide VICO with lists of accounts located within its geographic territory; (2) refused to provide VICO with a right of first refusal with regard to all technical sales support and service assignments; (3) failed to timely pay VICO for services rendered under the contract; (4) breached the agreement through the publication of malicious and defamatory statements concerning VICO; and (5) tortiously interfered with VICO's contractual interest.
As a result of VICO's claims, on or about April 29, 1996, VICO and IRD entered into a supplemental contract which the parties called a "memo of understanding and agreement." In its entirety, that agreement provided as follows:
 "On November 7, 1995, Vibration Instrumentation Consultants, Inc. (VICO) and IRD Mechanalysis, Inc. entered into a Sales and Service Agreement. After attempts to work under the turns [sic] of this agreement, both parties have agreed to terms which nullify and replace Sections 9, 10, 11, 12, 13 and 18 of said Sales and Service Agreement with the terms listed below and both parties hereby agree that the Sales and Service Agreement, is modified on the effective date of this agreement:
 "1 — IRD agrees to pay, and VICO agrees to accept a lump sum of $20,000 for all work performed through 5/1/96 (which has not yet been paid). In addition, IRD agrees to reimburse VICO for any expenses (properly documented With receipts) incurred in the performance with any activities through 5/1/96.
 "2 — IRD and VICO agree that as of 5/1/96, a fixed monthly retainer of $9,000/month (in arrears) will be paid to VICO by IRD for 11-13 days of work per month. (i.e., the 1st payment is for April, 1996)
 "3 — Parties also agree that any work (in days) beyond 13 in a given month will be subject to an additional $600 per day payment.
 "4 — Both parties agree that a day shall not be limited to eight hours (i.e., overtime, as such, will not be considered remunerable).
 "5 — As of 12/31/96, a calculation will be made of amounts paid to VICO (not including expenses) and, to the extent such does not attain the total of $110,000, IRD will pay the difference up to a total of $110,000.
 "6 — Item #2 above (retainer) shall automatically renew for 12 months, effective 1/1/97 unless IRD provides notice of termination or modification by 9/7/96." (Emphasis added.)
In its complaint, VICO alleges that while IRD performed under the amended contract through December 1996, it failed to provide timely notification of its intent not to renew the contract pursuant to paragraph six above. VICO also alleges that IRD then failed to perform under the renewed contract during 1997. As noted, VICO brought suit in the Franklin County Court of Common Pleas which then referred this matter to arbitration in accordance with the provisions of the parties' November 7, 1995 contract. VICO now appeals, raising the following assignment of error:
 "The trial court abused its discretion, erred as a matter of law and deprived appellant VICO of its constitutional rights of due process, of the freedom to contract, of the inviolability of property, of trial by jury and of access to the courts when denying VICO a jury trial concerning the arbitrability of an April 29th, 1996 memo of understanding and agreement between the parties and when ruling that said agreement was arbitrable as a matter of law with respect to all claims and all defendants in this action."
"Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." Southland Corp. v. Keating (1984), 465 U.S. 1, 7.
A state court faced with a question of arbitrability must first decide whether the parties agreed to arbitrate the dispute by applying the "federal substantive law of arbitrability." Southland, supra. See, also, Roberts v. Bank ofAm. NT SA (1995), 107 Ohio App.3d 301, 303, citing Weiss v.Voice/Fax Corp. (1994), 94 Ohio App.3d 309, 313, and MitsubishiMotors Corp. v. Soler Chrysler-Plymouth, Inc. (1985),473 U.S. 614, 626. The federal substantive law of arbitrability was pronounced by the United States Supreme Court in Prima PaintCorp. v. Flood Conklin Mfg. Co. (1967), 388 U.S. 395. Therein, the court explained:
 "* * * [T]he federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the 'making' of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." Id. at 403-404. (Emphasis added.)
As explained by the Eleventh District Court of Appeals inWindham Foods, Inc. v. Fleming Companies, Inc. (May 2, 1997), Trumball App. No. 96-T-5515, unreported:
 "The 'statutory language' referred to in the above excerpt is a reference to the Federal Arbitration Act, 9 U.S.C. et seq., which provided the basis for the Supreme Court's holding in Prima Paint.
 "Although the decision in Prima Paint was made in the context of federal court actions, the Supreme Court expressly required state courts to conform to the provisions of the Federal Arbitration Act in Southland Corp. v. Keating (1984), 465 U.S. 1 * * * The Supreme Court in Southland held that there are only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: (1) such clauses must be part of a written maritime contract or a contract evidencing a transaction involving commerce; and (2) such clauses may be revoked only upon grounds that exist in law or in equity for the revocation of any contract.
 "Beyond these limitations discussed in Southland, state law is not to encroach upon the enforceability of arbitration clauses. Even if the party opposing arbitration is relying upon state statutory rights, the Federal Arbitration Act still applies. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. (1985), 473 U.S. 614. * * *"
The court in Windham Foods, Inc. concluded:
 "Thus, a court should not consider the question of whether an entire contract is invalid due to fraud in the inducement if the contract contains an otherwise valid arbitration clause. If the agreement to arbitrate is not at issue, then the court must compel arbitration to proceed. The court can adjudicate the matter only if the plaintiff is alleging fraud in the inducement of the arbitration clause itself. See Krafcik v. USA Energy Consultants, Inc. (1995), 107 Ohio App.3d 59
* * *; Weiss; Smith v. Snap-On Tools Corp. (Jan. 6, 1993), 1993 Ohio App. Lexis 6511, Hamilton App. No. C-910902, unreported."
The rule of law set forth in Prima Paint has been codified in R.C. 2711.03 which provides:
 "The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement. If the making of the arbitration agreement or the failure to perform it is in issue, the court shall proceed summarily to the trial thereof. * * *" (Emphasis added.)
In this case VICO alleges that the November 7, 1995 sales and service agreement which contains the parties' agreement to arbitrate is no longer in force. As such, plaintiff argues that the trial court erred when it failed to hold a jury trial pursuant to R.C. 2711.03. However, VICO misapplies the applicable law as pronounced by the United States Supreme Court.
As set forth above, the trial court is required to order arbitration to proceed so long as the making of the agreementto arbitrate or the failure to comply therewith is not inissue. That is to say, "[t]he court can decide only questions regarding the validity of the arbitration clause itself. If the arbitration clause is valid, the court must compel arbitration. Only if the arbitration clause itself is found to be invalid can the court consider issues concerning the validity of the entire contract. In the face of a valid arbitration clause, questions regarding the validity of the entire contract must be decided in arbitration." Weiss, supra, at 313.
In this case, VICO does not directly challenge the making of the agreement to arbitrate.[1] Rather, VICO challenges the continued vitality of the parties' entire November 1995 contract in light of the subsequent April 1996 amendment. As noted above, however, the federal substantive law of arbitrability does not permit the trial court to consider attacks on the contract generally, but only allows the court to consider attacks directed toward the making of the arbitration agreement itself. Prima Paint, supra. As such, the trial court was not required to hold a jury trial on the issue of arbitrability pursuant to R.C. 2711.03. Moreover, we find that the trial correctly concluded that the specific issues presented in VICO's complaint were properly subject to the arbitration clause in question.
Pursuant to the rule of law set forth in Prima Paint, the existence of a broad arbitration provision, which was admittedly signed by the contractual parties, creates a presumption that the parties agreed to arbitrate all disputes arising out of the contract unless there exists the most forceful evidence of a purpose to exclude a particular claim from arbitration. See Chastain v. Robinson-Humphrey Co., Inc.
(C.A. 11, 1992), 957 F.2d 851, 854; Weiss, supra, at 313;Merrill Lynch, Pierce, Fenner etc. v. Haydu (C.A.5, 1981),637 F.2d 391, 398; and Cancanon v. Smith Barney, Harris, Upham Co. (CA. 11, 1986), 805 F.2d 998, 1000.
In Didado v. Lamson Sessions Co. (1992), 81 Ohio App.3d 302, the court identified two types of arbitration clauses: (1) unlimited clauses, providing for arbitration of all disputes arising out of a contract; and (2) limited clauses providing for arbitration of a specific type of dispute arising out of a contract.
In this case, the arbitration clause contained within the November 7, 1995, contract is clear in providing that the parties agreed that "[a]ll disputes relating to this Agreement shall be submitted to binding arbitration before a panel mutually agreed to by the parties and conducted in accordance with the Rules of the American Arbitration Association." The terms of the April 29, 1996 "memo of understanding and agreement" are also clear in providing that "both parties haveagreed to terms which nullify and replace Sections 9, 10, 11,12, 13 and 18 of said Sales and Service Agreement with theterms listed below and both parties hereby agree that the Salesand Service Agreement, is modified on the effective date ofthis agreement * * *." In this case, the arbitration clause contained in paragraph forty-four of the parties' sales and service agreement was not modified by the April 1996 memorandum understanding. That clause is also broadly defined, and as noted, VICO does not contend that it did not agree to the arbitration provision or that it did so by fraud, inadvertence, or mistake. Accordingly, the trial court correctly determined that neither the making of the arbitration agreement, nor the failure to perform that agreement, is in issue. As such, the trial court was not required to hold a hearing on the issue of arbitrability pursuant to R.C. 2711.03.
For the foregoing reasons, we are unable to find that the trial court erred in submitting plaintiff's claims to arbitration. Accordingly, we hereby overrule plaintiff's assignment of error and hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BOWMAN, J., and LAZARUS, P.J., concur.
[1] VICO's failure to comply with the arbitration provision is also not in dispute.