932 So.2d 537 (2006)
ROWE ENTERPRISES LLC and Rowe Supermarkets LLC, Appellants,
v.
INTERNATIONAL SYSTEMS & ELECTRONICS CORPORATION, a Florida corporation, and ExpoCredit Corporation, a Florida corporation, Appellees.
No. 1D06-557.
District Court of Appeal of Florida, First District.
June 22, 2006.
*538 Alan S. Wachs, Kenneth C. Steel, III, and Genesa L. Eavenson of Volpe, Bajalia, Wickes, Rogerson, Galloway & Wachs, Jacksonville, for Appellants.
Moises T. Grayson, and David A. Strauss of Blaxberg, Grayson, Kukoff & Segal, P.A., Miami, for Appellee International Systems & Electronics Corporation. No appearance for appellee ExpoCredit Corporation.
WEBSTER, J.
Appellants seek review of an order granting appellee International Systems & Electronics Corporation's (ISE) motion to compel arbitration in this contract dispute. They contend that the trial court committed reversible error when it ruled on the motion to compel arbitration without holding the expedited evidentiary hearing they requested. Because we conclude that factual disputes exist as to whether appellants ever agreed to arbitrate future disputes arising out of the parties' contractual relationship, we agree with appellants that they were entitled to the expedited evidentiary hearing they requested directed to that issue. Accordingly, we reverse, and remand for further proceedings.
The parties entered into a sales agreement in which appellants agreed to purchase from ISE a package of electronic equipment, software and technical assistance necessary for the operation of five of appellants' supermarkets. The agreement was evidenced by purchase orders called "Investment Summaries." Each was signed by Rob Rowe, as principal for appellants, and provided that "[t]he investment schedule and all ISE products and services offerings is [sic] subject to the ISE Uniform Agreement terms and conditions."
Appellants filed an action against appellees alleging a breach of contract. ISE responded with a "Motion to Dismiss and to Compel Arbitration," claiming that the Investment Summaries incorporated by reference a "Uniform Sales, Service and Support Agreement" which provided, among other things, that the parties "hereby agree and consent to arbitrate any and all Disputes with an arbitrator of the American Arbitration Association (`AAA') in Dade County, Florida." Attached to the motion was what ISE represented to be a copy of the Uniform Sales, Service and Support Agreement supposedly signed on the last page by Rowe. Appellants, in turn, filed a "Motion to Stay Arbitration Proceeding" and an affidavit executed by Rowe, asserting that Rowe had never before seen the Uniform Sales, Service and Support Agreement; that the signature on that agreement was not made by him, and *539 was a forgery; and that he never agreed that future disputes arising out of the parties' contractual relationship might be resolved by arbitration. Appellants requested "an evidentiary hearing to establish a lack of genuineness as to the Purported Agreement to Arbitrate."
The trial court held a hearing on the parties' motions, at which ISE argued that, because appellants were challenging the validity of the entire Uniform Sales, Service and Support Agreement rather than just the arbitration clause contained therein, the dispute must be resolved by the arbitrator and, therefore, appellants were not entitled to an evidentiary hearing in the trial court. Appellants responded that they were contending that they had never signed any document containing an agreement to arbitrate and that, therefore, no agreement to arbitrate existed. Because of the nature of their contention, they asserted that the trial court was obliged to hold an expedited evidentiary hearing on the issue. Without holding any evidentiary hearing as requested by appellants, the trial court entered its order granting the motion to compel arbitration, "find[ing] that the parties indeed have an agreement containing a provision that the matter be submitted to arbitration." This appeal from that non-final order follows. We have jurisdiction. Art. V, § 4(b)(1), Fla. Const. (granting to district courts of appeal jurisdiction to "review interlocutory orders ... to the extent provided by rules adopted by the supreme court"); Fla. R.App. P. 9.130(a)(3)(C)(iv) (providing for appeal to the district courts of appeal of non-final orders that "determine ... the entitlement of a party to arbitration").
The parties have proceeded in both the trial court and this court on the assumption that the applicable law is that found in the Florida Arbitration Code (§§ 682.01-682.22, Fla.Stat.(2005)), rather than in the Federal Arbitration Act (9 U.S.C. §§ 1-16 (2000)). Although it is far from clear that such an assumption is correct given the nature of the parties' contract, see Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (concluding that Congress intended to exercise its full Commerce Clause power when it passed the Federal Arbitration Act), it is unnecessary for us to address this issue because, for purposes of this appeal, the relevant provisions of the two acts (i.e., section 682.03(1), Florida Statutes (2005), and title 9, section 4, United States Code (2000)) "are virtually identical." See Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed, 425 So.2d 127, 128 n. 4 (Fla. 4th DCA 1982). Because resolution of the issue before us turns on construction of a statute, our standard of review is de novo. See, e.g., Racetrac Petroleum, Inc. v. Delco Oil, Inc., 721 So.2d 376, 377 (Fla. 5th DCA 1998) ("judicial interpretation of Florida statutes is a purely legal matter and therefore subject to de novo review"); Dep't of State v. Martin, 885 So.2d 453, 456 (Fla. 1st DCA 2004) (same, citing Racetrac Petroleum), affirmed, 916 So.2d 763 (Fla.2005).
Section 682.03(1) of the Florida Arbitration Code reads:
A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according *540 to its determination, shall grant or deny the application.
(Emphasis added.) Similarly, to the extent pertinent, section 4 of the Federal Arbitration Act reads:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof....
(Emphasis added.)
Recently, in Buckeye Check Cashing, Inc. v. Cardegna, ___ U.S. ___, 126 S.Ct. 1204, 1208, 163 L.Ed.2d 1038 (2006), the United States Supreme Court identified three types of challenges to arbitration agreements in Federal Arbitration Act cases. The first "challenges specifically the validity of the agreement to arbitrate"; the second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the legality of one of the contract's provisions renders the whole contract invalid"; and the third challenges "whether any agreement between the alleged obligor and obligee was ever concluded" based on issues such as "whether the alleged obligor ever signed the contract,... whether the signor lacked authority to commit the alleged principal, ... and whether the signor lacked the mental capacity to assent...." Id. at 1208 and n. 1. As a result of the Buckeye Check Cashing decision, it is now clear that the court must decide the first type of challenge, and the arbitrator must decide the second. Although the Court declined to address the question of who must decide the third, several lower federal courts have done so, concluding that such challenges must also be decided by the court.
A particularly instructive decision for our purposes is Chastain v. Robinson-Humphrey Co., 957 F.2d 851 (11th Cir. 1992). There, Chastain had filed an action in Georgia state court alleging securities fraud on the part of Robinson-Humphrey. Id. at 853. Robinson-Humphrey removed the action to federal court, and then filed a motion to compel arbitration pursuant to arbitration provisions in two customer agreements. Id. Chastain responded, claiming by affidavit that only her father had signed one agreement, and that she had not given her father authority to do so; and that a signature purporting to be hers on the other agreement was a forgery. Id. Robinson-Humphrey ultimately conceded that Chastain had not actually signed either agreement, id.; however, it argued that she was nevertheless bound either because Chastain's father had authority to bind her when he signed one agreement or because Chastain subsequently ratified the agreements. Id. at 856. The trial court concluded that, given the positions of the parties, it, rather than a panel of arbitrators, must decide whether a valid agreement to arbitrate existed. Id. at 852-53. The court of appeals agreed, concluding that Chastain's affidavit *541 placed in issue the validity of the agreement to arbitrate. Id. at 855. The court said:
Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration.... Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general.... Because the making of the arbitration agreement itself is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.... The calculus changes when it is undisputed that the party seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the Act. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, the district court itself must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.
Id. at 854 (citations and footnote omitted; emphasis in original). See also Spahr v. Secco, 330 F.3d 1266, 1273 (10th Cir.2003) (holding that the court must decide whether a party had sufficient mental capacity to enter into a contract containing an arbitration provision); Sphere Drake Ins. Ltd. v. All Am. Ins. Co., 256 F.3d 587, 590-92 (7th Cir.2001) (holding that the court must determine whether the signatory had the power to bind the company to a contract containing an arbitration provision); Sandvik AB v. Advent Int'l Corp., 220 F.3d 99 (3d Cir.2000) (same).
Decisions of Florida courts are to the same effect, concluding that such issues must be resolved before the trial court can reach a decision regarding validity of the arbitration provision. See, e.g., Affinity Internet, Inc. v. Consol. Credit Counseling Servs., Inc., 920 So.2d 1286 (Fla. 4th DCA 2006) (whether the party sought to be compelled to arbitrate had signed a user agreement containing an arbitration provision, which was alleged to have been incorporated by reference into the contract); Extendicare Health Servs., Inc. v. Estate of Patterson, 898 So.2d 989 (Fla. 5th DCA 2005) (whether decedent's estate could be bound by an arbitration provision contained in a contract to which decedent was not a party); Epstein v. Precision Response Corp., 883 So.2d 377 (Fla. 4th DCA 2004) (whether an officer of a corporation that is a party to a contract containing an arbitration provision is bound by that provision even if he did not sign the contract); Gustavsson v. Washington Mut. Bank, F.A., 850 So.2d 570 (Fla. 4th DCA 2003) (whether the party sought to be compelled to arbitrate could be bound by an arbitration provision in a document, which he never saw, supposedly incorporated by reference into the contract).
We find these federal and state decisions persuasive given the substantial nature of the factual dispute created by Rowe's affidavit. It is clear that, pursuant to section 682.03(1) of the Florida Arbitration Code, when a factual dispute such as that in this case exists, upon request, the trial court must hold an expedited evidentiary hearing and determine whether a *542 valid agreement to arbitrate exists. E.g., Linden v. Auto Trend, Inc., 923 So.2d 1281 (Fla. 4th DCA 2006); Tandem Health Care of St. Petersburg, Inc. v. Whitney, 897 So.2d 531 (Fla. 2d DCA 2005); Epstein v. Precision Response Corp., 883 So.2d 377 (Fla. 4th DCA 2004); Merrill Lynch Pierce Fenner & Smith, Inc. v. Melamed, 425 So.2d 127 (Fla. 4th DCA 1982). Because, notwithstanding appellants' request for an expedited evidentiary hearing, the trial court failed to conduct one, we are constrained to reverse, and to remand for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
KAHN, C.J., and HAWKES, J. concur.