BRADSHAW CONSTRUCTION CORPORATION, Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON, Defendants.

Case No. 14–24385–CIV.

United States District Court, S.D. Florida.

Signed March 24, 2015.

Filed March 25, 2015.

Ashley Brooke Hacker, Christine A. Gudaitis, Ver Ploeg & Lumpkin, P.A., Miami, FL, for Plaintiff.

Aidan M. McCormack, Mark Deckman, Ardith M. Bronson, DLA Piper LLP, Miami, FL, for Defendants.

## ORDER

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Defendants, Underwriters at Lloyd's, London's ("Defendants[']")[1] Motion ... to Dismiss or, Alternatively, Compel Arbitration ... ("Motion") [ECF No. 8], filed January 15, 2015. On February 9, 2015, Plaintiff, Bradshaw Construction Corporation ("Plaintiff"), filed its Response ... ("Response") [ECF No. 29], and Defendants filed their Reply ... ("Reply") [ECF No. 33] on February 20, 2015. The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

Plaintiff is a Maryland corporation "engaged in the business of microtunneling," which involves, among other things, installing "reinforced concrete pipe." (Compl. [ECF No. 1] ¶¶ 4, 12). On February 25, 2010, Plaintiff entered into a subcontract with Dragados USA, Inc., under which Plaintiff agreed to perform microtunnel work for a roadway improvements project in Broward County (the "Project"). (*See id.* ¶ 12). Defendants—a consortium of foreign insurers—issued an insurance policy (the "Policy")[2] to cover the Project, and Plaintiff was named as an insured. (*See id.* ¶¶ 5–9). In August 2010, while Plaintiff was working on the Project, a pipe joint structurally failed, damaging the Project and causing Plaintiff to suffer significant losses. (*See id.* ¶ 13).

---

1. According to Defendants, they are incorrectly sued as "Underwriters at Lloyd's, London." (*See* Mot. 1). Defendants are properly identified as "an alleged consortium of insurers comprised of the following": (1) HDI–Gerling Industrial Insurance Company UK Branch; (2) Starr Managing Agents Limited (SMAL); (3) Torus Insurance (UK) Limited; (4) Federal Insurance Company; (5) Infrassure Limited; (6) ACE European Group Limited; (7) Mapfre Global Risks, Compania Internacional De Seguros Y Reaseguros; and (8) Hardy (Underwriting Agencies). (Corporate Disclosure Statements [ECF Nos. 13–20]).

2. As explained *infra,* the parties dispute which policy numbers are assigned to the Policy and which documents in the record are part of the Policy. The parties do, however, agree that a policy—the Policy—was issued.

Plaintiff thereafter engaged in a years-long process to obtain indemnity under the Policy, without success. (*See id.* ¶¶ 14–33). On November 18, 2014, Plaintiff brought suit against Defendants, asserting one claim of breach of contract for Defendants' alleged "breach[ of] the Policy by failing to indemnify [Plaintiff] in relation to the Project." (*Id.* ¶¶ 37–40 (alterations added)). Defendants now move the Court to enforce a provision allegedly found in the Policy (the "Provision"), purportedly requiring the parties to resolve this dispute through arbitration under the Federal Arbitration Act (the "FAA"), 9 U.S.C. section 1 *et seq.* or, in the alternative, the Florida Arbitration Code, Florida Statutes section 682.01 *et seq.* (*See generally* Mot.). The Provision states as follows:

### 8. ARBITRATION

If any differences shall arise as to the amount to be paid under this Policy (liability being otherwise admitted) such differences shall be referred to an Arbitrator to be appointed by the parties in accordance with the statutory provisions in that behalf for the time being in force. Where any difference is by this Condition to be referred to arbitration the making of an award shall be a condition precedent to any right of action against the Insurers.

(Compl., Ex. A [ECF No. 1–3] at 32). Plaintiff opposes the Motion, arguing Defendants have not established the Provision is part of the Policy and, assuming the Provision is applicable, it is an appraisal provision, not an arbitration provision. (*See generally* Resp.).

■ "The FAA embodies a liberal federal policy favoring arbitration agreements." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir.2008) (internal quotation marks and citations omitted).[3] A court must "rigorously enforce [an] agreement[ ] to arbitrate," *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1192 (11th Cir. 1995) (alterations added; internal quotation marks and citation omitted), but only if the court "is satisfied that a valid arbitration agreement exists," *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir.1986) (citing 9 U.S.C. § 4), *abrogation on other grounds recognized by Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1278 (11th Cir.2012). If, after reviewing the parties' submissions, the Court is "satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (alteration added). But if "the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.* (alteration added).

■ Defendants argue the existence of a valid and enforceable arbitration agreement—the Provision—requires the Court to dismiss this case for lack of subject-matter jurisdiction or, in the alternative, stay the case pending the result of arbitration proceedings. (*See* Mot. 1–2). According to Defendants, Plaintiff's claim for indemnity under the Policy falls within the scope of the Provision, which permits judi-

---

**3.** The FAA governs contracts involving interstate commerce, *see* 9 U.S.C. §§ 1–2, and thus a federal court sitting in diversity adjudicating a contract dispute involving interstate commerce applies the FAA to the contract's arbitration provision. *See Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir.2014) (citation omitted). Given the Defendants are

foreign insurers (*see* Compl. ¶ 5), and Plaintiff does not dispute the Policy involves interstate commerce, the Court applies the FAA, and not the Florida Arbitration Code, to adjudicate the Motion. *See Sims v. Clarendon Nat'l Ins. Co.*, 336 F.Supp.2d 1311, 1316–17 (S.D.Fla.2004).

cial proceedings only after an award of arbitration. (*See id.* 3–4). Plaintiff responds Defendants have not established the Provision is part of the Policy, and thus there is no agreement to arbitrate for the Court to enforce. (*See* Resp. 4; *see also* Compl. ¶ 6 & n. 1). Because the Court must proceed to trial if the making of the purported arbitration agreement is in issue, the Court addresses this argument first.

 "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists. Rather, that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 855 (11th Cir.1992) (citations omitted). Plaintiff places the existence of the purported arbitration agreement into dispute, arguing it remains unclear what insurance policy governs the dispute, as Defendants have failed to identify the applicable policy despite Plaintiff's repeated requests. (*See* Resp. 4; Compl. ¶ 6 & n. 1). According to Plaintiff, it was issued an insurance policy bearing policy number B0901 LB0912448 000 (the "448 Policy"), but Defendants' loss adjuster, Crawford & Company ("Crawford"), later sent Plaintiff a document bearing policy number B0901 LB0912694 000 (the "694 Policy"), which, according to Crawford, "is the policy under which 'we completed the order.'" (*Id.* ¶ 26; *see also id.* ¶ 6 & n. 1). Plaintiff made follow-up requests but each time received only incomplete copies of policies. (*See id.* ¶¶ 16, 24–26, 29). Plaintiff contends the policy governing this dispute could be the 448 Policy, the 694 Policy, both of these policies, or neither of them. (*See* Resp. 4).

Defendants provide a partial explanation for this discrepancy and suggest the 694 Policy now controls. According to Defendants, "[t]he broker (JLT) originally tried to place the project ... under [the 448 Policy]," but due to complications, "the broker had to complete the order with ... [the 694 Policy]." (Reply 9 (alterations added)). Defendants further argue any discrepancy is irrelevant because the 448 Policy and the 694 Policy, including their arbitration provisions, "mirror each other." (*Id.* 9–10). But the parties have pointed to, and the Court has been able to find, only one arbitration agreement in the record: the Provision, which bears the policy number of the 448 Policy. (*See* Compl., Ex. A [ECF No. 1–3] at 32). Defendants do not explain why they have not submitted the arbitration provision of the 694 Policy,[4] and the Court cannot assume it has the same arbitration provision as the 448 Policy just because Defendants say so.

The Court cannot grant Defendants' Motion "until it is satisfied that a valid arbitration agreement exists," *Miller,* 791 F.2d at 854 (citing 9 U.S.C. § 4), and Plaintiff has submitted enough evidence to make its denial of the purported arbitration agreement colorable, *see Chastain,* 957 F.2d at 855. Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion [ECF No. 8] is **DENIED without prejudice.** The parties are to submit a revised scheduling report by **March 31, 2015,** addressing proposed deadlines for a summary trial on the issue of whether the parties entered into an agreement to arbitrate. The proposed deadlines shall include discovery deadlines

---

4. Parts of the 694 Policy are in the record, but those parts do not contain an arbitration provision. (*See* Compl. Ex. B [ECF No. 1–4] ). The Court notes, however, that one page, which appears to be a table of contents for the 694 Policy, states an arbitration provision is in the policy. (*See id.* 8).

if the parties wish to conduct limited discovery.