K. MICHAEL MOORE, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court upon Defendant's Motion to Compel Arbitration (ECF No. 14). Plaintiff filed a Response in Opposition (ECF No. 20), and Defendant filed a Reply (ECF No. 22). The matter is now ripe for review. For the reasons stated below, the Motion is granted.
I. BACKGROUND
A. Factual Background
This case arises out of a dispute over a subscription to Comcast services. Plaintiff alleges that when Plaintiff signed up for Comcast's services, Comcast obtained a credit report without authorization despite a payment of $100 deposit which Comcast allegedly agreed to accept in lieu of performing a credit check.
In November of 2017, Plaintiff Jean Milfort ("Plaintiff") contacted Comcast to order cable television services and to schedule installation of those services. See Declaration of Nicole Patel (ECF No. 14-1) ("Patel Decl."), at ¶ 5-6. In November of 2017, Plaintiff entered into a 12-month agreement with Comcast for a discounted "Digital Starter" package of television services. Id. The agreement expressly stated that it is "subject to ... Comcast's standard terms and conditions of service" and further states that its provisions "supplement the terms and conditions of the Comcast agreement for residential services for Cable, High Speed Internet and Digital Voice services." Id. It was Comcast's routine and regular business practice to provide a copy of the Subscriber Agreement to subscribers. Id. at ¶ 7. Comcast sent Plaintiff an email on November 17, 2017 at 5:27pm EST containing *1270 hyperlinks to the Subscriber Agreement. Id. at ¶ 8. Comcast sent Plaintiff another e-mail on November 17, 2017 at 5:43pm EST confirming the details of Plaintiff's order and upcoming installation. The email notified Plaintiff that: "Your Xfinity services are provided to you on the terms and conditions set forth in the Comcast Agreement for Residential Services" and included a hyperlink to the Subscriber Agreement. Id. At Plaintiff's installation on November 18, 2017, Plaintiff added an additional television adapter and signed forms confirming acceptance of the services and acknowledging that they were subject to Comcast's Subscriber Agreement. Id. at ¶ 12. In December 2017, Plaintiff voluntarily disconnected the services. Id. at ¶ 18. Pursuant to its 30-day money-back guarantee, Comcast gave Plaintiff a refund of all payments he had made, including the $100 deposit. Id.
Plaintiff alleges three causes of action. See Complaint (ECF No. 1). In Count I, Plaintiff alleges Comcast violated the Fair Credit Reporting Act when Defendant accessed Plaintiff's credit report without authorization. In Count II, Plaintiff alleges Comcast violated the Florida Deceptive and Unfair Trade Practices Act by misrepresenting to Plaintiff that Defendant would not obtain Plaintiff's credit report if Plaintiff paid Defendant a non-refundable deposit of $100.00. In Count III, Plaintiff alleges Comcast committed common law fraud by intentionally and recklessly misleading Plaintiff regarding whether Defendant would obtain Plaintiff's credit report.
Comcast moves to compel arbitration. Comcast argues that the parties entered into a valid and binding agreement (the "Subscriber Agreement") which provides that the parties will arbitrate disputes and that this dispute falls within the scope of the agreement. See Motion to Compel Arbitration ("Mot. to Comp. Arbitration") (ECF No. 14). In opposition, Plaintiff argues that there is no operative agreement to arbitrate because the Agreement was terminated upon cancellation of service in December 2017. See Plaintiff's Opposition ("Pl's Opp.") (ECF No. 20).
B. The Agreements Between Comcast and Plaintiff
The relationship between Comcast and each customer is governed principally by a service contract between the parties, the Subscriber Agreement, which sets forth the parties' rights and obligations, and explains the terms and conditions of subscribing to Comcast services. See Patel Decl. at ¶ 15. Plaintiff received copies of the Subscriber Agreement on several occasions. See id. ¶ 7-8, 10-11, 13. The Subscriber Agreement contained the arbitration provision in question. Id. Ex. F.
The Subscriber Agreement states, "[t]his agreement contains a binding arbitration provision in section 13 that affects your rights under this agreement with respect to all service(s). The arbitration provision requires that disputes be resolved in individual arbitration or small claims court proceedings. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court." See Patel Decl., Ex. F. Further, the Subscriber Agreement contains a section entitled "Binding Arbitration" and applies to "any dispute involving you and us shall be resolved through individual arbitration" See Patel Decl., Ex. F § 13. There is a right to opt out of arbitration by notifying Comcast within thirty days of activation by visiting their website, or in writing by mail to Comcast. Id. Ex. F § 13(d). The life of the arbitration provision is governed by a clause stating that it "shall survive the termination of your Service(s) with us." Id. Ex. F § 13(j).
*1271 II. APPLICABLE LAW
The Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. , 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ; see also Dean Witter Reynolds Inc. v. Byrd , 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (noting that where parties have seen fit to adopt arbitration clauses in their agreements, there is a "strong federal policy in favor of enforcing [them]"). The validity of an arbitration agreement is governed by the Federal Arbitration Act ("FAA"). Bhim v. Rent-A-Center, Inc. , 655 F.Supp.2d 1307, 1309 (S.D. Fla. 2009) (citing Weeks v. Harden Mfg. Corp. , 291 F.3d 1307, 1312-13 (11th Cir. 2002) ). "The FAA establishes a 'federal policy favoring arbitration ... requiring that [courts] rigorously enforce agreements to arbitrate.' " Davis v. Prudential Sec., Inc. , 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express Inc. v. McMahon , 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) ).
The FAA provides that a court must either stay or dismiss a lawsuit and compel arbitration upon a showing that "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind. , 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2 - 4 ). Pursuant to this policy, courts must construe "any doubts concerning the scope of arbitrable issues ... in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc. , 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Thus, the party opposing arbitration has the burden, "not unlike that of a party seeking summary judgment," of showing why the court should not compel arbitration. Bhim , 655 F.Supp.2d at 1310 (citing Aronson v. Dean Witter Reynolds, Inc. , 675 F.Supp. 1324, 1325 (S.D. Fla. 1987) (citations omitted) ).
III. ANALYSIS
Plaintiff argues the motion to compel should be denied because there is no valid arbitration agreement. First, Plaintiff argues that by cancelling the Comcast service, the Arbitration Provision was thereby cancelled. Second, Plaintiff argues that the methods specified in the arbitration provision to opt out are "ambiguous." Defendant argues that the Arbitration Provision is valid despite cancellation of the Agreement. Further, Defendant argues that the Arbitration Provision is not ambiguous and that Plaintiff conceded that neither of the two affirmative steps to opt out of arbitration was taken.
A. A Valid Agreement to Arbitrate Exists
Plaintiff argues that by cancelling his Comcast services, the Arbitration Provision was thereby cancelled. See Pl's Opp. at 2-3. Defendants argue that the obligation to arbitrate survives the termination of the Subscriber Agreement.
The Supreme Court recognized a "presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication." Litton Fin. Printing Div. v. NLRB , 501 U.S. 190, 204, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (internal quotation marks and citation omitted). The Court of Appeals for the Sixth Circuit found "the need for an arbitration provision to have post-expiration effect is intuitive." Huffman v. Hilltop Companies, LLC , 747 F.3d 391, 395 (6th Cir. 2014). This is so because if "the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by *1272 simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect." Zucker v. After Six, Inc. , 174 Fed.Appx. 944, 947-8 (6th Cir. 2006).
Here, the Subscriber Agreement contains a survivability clause. See Patel Decl., Ex. F § 9(a) ("Except for those provisions which by their nature survive the termination of this Agreement, this Agreement will be in effect from the time that the Service(s) are activated until (1) it is terminated as provided for by this Agreement or by any addendum to this Agreement or (2) it is replaced by a revised Agreement."). Additionally, the Subscriber Agreement specifically states that the "Arbitration Provision shall survive the termination of your Service(s) with us." Id. Ex. F at § 13(j).
There is no support for the proposition that the arbitration provision was negated expressly or by clear implication following termination of the Subscriber Agreement. Shea v. BBVA Compass Bancshares, Inc. , No. 1:12-CV-23324-KMM, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013) ("despite Plaintiff's claim that he terminated the Agreements, the Arbitration Provision is still valid and enforceable."); Day v. Persels & Assocs. , No. 8:10-CV-2463-T-33TGW, 2011 WL 1770300, at *3 (M.D. Fla. May 9, 2011) (finding that the cancellation did not revoke the entire agreement where the agreement expressly stated that the "Arbitration Agreement ... paragraph[ ] of this agreement continue to apply after this agreement ends"). The Court finds that the strong presumption in favor of "post-expiration arbitration" supports Comcast's argument that the arbitration provision remains in effect following termination of the Subscriber Agreement. Accordingly, the Court finds that a valid agreement to arbitrate exists between the parties.
Plaintiff also argues that the methods specified in the arbitration provision to opt out are "ambiguous" and this purported ambiguity should be interpreted against Comcast as the drafter of the agreement. See Pl's Opp. at 5-6. Defendant argues that Plaintiff conceded that neither of the two affirmative steps to opt out of arbitration was taken. The Arbitration Provision provides for a right to opt out and states:
Right to Opt Out. IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH US ARBITRATED BY NOTIFYING US, WITHIN 30 DAYS OF YOUR FIRST XFINITY SERVICE ACTIVATION, BY VISITING WWW.XFINITY.COM/ARBITRATIONOPTOUT, OR IN WRITING BY MAIL TO COMCAST 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION TO US MUST INCLUDE YOUR NAME, ADDRESS AND OUR ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH US THROUGH ARBITRATION.
See Patel Decl. Ex. F at § 13(d). The Subscriber Agreement also provides that the "Arbitration Provision shall survive the termination of your Service(s) with us." Id. Ex. F at § 13(j). The procedure for opting out of arbitration was clear and unambiguous. See McDougal v. Comcast Corp. , No. 16-81906-CIV, 2017 WL 3726040, at *5 (S.D. Fla. Feb. 24, 2017) (compelling arbitration and finding a substantially similar Comcast arbitration provision valid). The Plaintiff has not presented any evidence of compliance with the provision's specific requirement that a rejection notice be sent to Comcast. Therefore, the arbitration provision is applicable.
*1273 B. Plaintiff's Claims Fall Under the Scope of the Arbitration Agreement
A dispute is subject to arbitration if the parties have agreed to arbitrate it. Int'l Underwriters AG v. Triple I: Int'l Investments, Inc. , 533 F.3d 1342, 1344 (11th Cir. 2008). The Court of Appeals for the Eleventh Circuit stated:
Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause. Chastain v. Robinson-Humphrey Co. , 957 F.2d 851, 854 (11th Cir. 1992). Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Navigation Co. , 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
Telecom Italia, Spa v. Wholesale Telecom Corp. , 248 F.3d 1109, 1114 (11th Cir. 2001).
"Federal courts interpret arbitration clauses broadly where possible," and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." Solymar Investments, Ltd. v. Banco Santander S.A. , 672 F.3d 981, 988-89 (11th Cir. 2012 (quoting First Options of Chi., Inc. v. Kaplan , 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ). However, the presumption in favor of post-expiration arbitration of matters is "limited by the vital qualification that arbitration [is] of matters and disputes arising out of the relation governed by contract." Litton , 501 U.S. at 204, 111 S.Ct. 2215. To determine whether a dispute arises out of a contract, the Court of Appeals for the Eleventh Circuit has focused on "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." Doe v. Princess Cruise Lines, Ltd. , 657 F.3d 1204, 1218 (11th Cir. 2011) (internal citations omitted). "Relating to" sets "a boundary by indicating some direct relationship; otherwise, the term would stretch to the horizon and beyond." Id.
The arbitration provision in the Subscriber Agreement is broad. In order to be arbitrable, the claim must relate to the agreement, any addendum, or the customer's service. Here, Plaintiff negotiated a service contract, and in the process Comcast obtained Plaintiff's credit report without authorization despite payment of a $100 deposit which Comcast allegedly agreed to accept in lieu of performing a credit check. The Court finds that this is related to Plaintiff's service and thus falls within the scope of the arbitration provision in the Subscription Agreement.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that Comcast's Motion to Compel Arbitration (ECF No. 14) is GRANTED. Plaintiff is hereby ORDERED to submit this dispute to arbitration pursuant to the Subscriber Agreement within sixty (60) days of the date of this Order. All proceedings in this action are STAYED pending arbitration of the Parties' dispute. The Parties are directed to notify the Court of the outcome of the arbitration within thirty (30) days of its completion. The Clerk of the Court is directed to administratively CLOSE this case. All pending motions are DENIED AS MOOT.
DONE AND ORDERED in Chambers at Miami, Florida, this 9th day of April, 2018.